The STATE of Ohio, Appellee,

v.

MASSEY, Appellant.

[Cite as *State v. Massey* (1998), 128 Ohio App.3d 438.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–970617.

Decided June 19, 1998.

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Ronald W. Springman, Jr.*, Assistant Prosecuting Attorney, for appellee.

*Heidi A. Selden*, for appellant.

---

PAINTER, Judge.

Defendant-appellant Cheryl Massey was convicted for child endangering under R.C. 2919.22(A). A jury found Massey guilty of the felony version of the statute, which requires a finding of serious physical harm to the child.

· The facts presented at trial were largely undisputed. On the evening of March 17, 1997, Massey was feeding her four young children when two-and-one-half-year-old Jasmine soiled her diaper. Massey took her to the bathroom, ran a bath, and placed the child in the bathtub. Jasmine apparently did not appreciate the bath and repeatedly attempted to get out of the tub. Meanwhile, Jasmine's twin brother Justin was in the bathroom, throwing objects into the tub. Jasmine had another bowel movement while in the bathtub.

In her taped statement made to the police, Massey asserted that she turned away for several seconds to find some shampoo or soap. She heard a splash, and when she turned around, Jasmine was submerged in the tub and looked frightened. The interrogating officer testified that Massey had told him, before her statement was recorded, that she had left her daughter in the bathtub unattended for between thirty seconds and four minutes while she dealt with Justin.

Turning around and seeing Jasmine submerged, Massey grabbed her from the tub and placed her on her "potty chair," which was next to the tub. Jasmine fell over and struck her head against the wall of the tub. Massey attempted to right her on the potty chair, and the child again fell over. Massey stated that, at this point, she realized something was wrong, that her child was not responsive, and the child could not keep her eyes open. Massey called 911, but could not communicate effectively because she was hysterical. The 911 operator traced the call and dispatched police to Massey's residence.

The responding officers found Jasmine to be "okay," with a bruise on her head. The firefighter/EMT who responded to the scene also determined that Jasmine appeared normal, with slight swelling to her head. The doctor who examined Jasmine the next day characterized her head injury as minor. The doctor also found no symptoms of respiratory distress suggestive of water in Jasmine's lungs.

One of the officers on the scene, a specialist in child abuse, noticed a couple of tiny reddish welts on the child. He determined that the child should be brought to Children's Hospital to be evaluated for possible child abuse. He asked Massey to bring Jasmine to the hospital, which she did.

Jasmine remained at Children's Hospital until March 20 and was evaluated by a team specializing in child abuse. Dr. Stone, who examined Jasmine on March 18, testified that she could not classify Jasmine's head injury or the tiny welts as indications of child abuse. On March 20, Jasmine was released to Massey. But, on March 27, the Cincinnati Police Department requested Massey's presence downtown for an interview. Massey obliged. She was read her rights at 12:27 p.m. and gave a ten-minute, nonincriminating taped statement at 4:09 p.m.

The state then charged Massey with child endangering (not child abuse, which involves abuse, torture, or excessive corporal punishment). After a jury trial, Massey was convicted. The trial court sentenced her to four years in prison.

From this conviction, Massey brings three assignments of error.[1] In her first assignment, Massey argues that she violated no duty of care, protection, or support. In her second assignment, Massey asserts that no serious physical harm to Jasmine resulted from her actions. These two assignments essentially challenge the sufficiency of the evidence. In her third assignment, Massey claims that the verdict was against the manifest weight of the evidence. In her fourth assignment, she asserts that the trial court erred in admitting prejudicial evidence. We review the issue of sufficiency first.

Whether evidence is insufficient to support a conviction is a question of law.[2] Sufficiency of the evidence is the legal standard applied to determine whether the case may go to the jury or whether the evidence is legally sufficient as a matter of law to support the jury verdict.[3] When reviewing the sufficiency of the evidence, we must view the evidence in the light most favorable to the prosecution and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[4]

Massey was convicted for child endangering under R.C. 2919.22(A), which states, in part: "No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age * * * shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support." The Ohio Supreme Court has held that the culpable mental state of recklessness is an essential element of endangering children under R.C. 2919.22(A).[5] Another element of child endan-

---

1. This case is *sua sponte* removed from the accelerated calendar.

2. *State v. Thompkins* (1997), 78 Ohio St.3d 380, 678 N.E.2d 541.

3. *Id.*

4. See *Jackson v. Virginia* (1979), 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560; *State v. Jamison* (1990), 49 Ohio St.3d 182, 552 N.E.2d 180.

5. *State v. McGee* (1997), 79 Ohio St.3d 193, 680 N.E.2d 975, syllabus.

gering—that the defendant's conduct cause serious physical harm to the child—elevates the offense from a first-degree misdemeanor to a third-degree felony.[6] Massey was convicted of this felony version of the statute.

■ Construing the evidence in the light most favorable to the state, we hold that there was insufficient evidence to convict Massey under the felony version of the child-endangering statute. "Serious physical harm to persons" is defined in R.C. 2901.01(A)(5): "(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment; (b) Any physical harm that carries a substantial risk of death; (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity; (d) Any physical harm that involves some permanent disfigurement, or that involves some temporary, serious disfigurement; (e) Any physical harm that involves acute pain of such duration as to result in substantial suffering, or that involves any degree of prolonged or intractable pain."

When police and the EMT from the fire department arrived at Massey's residence, the child was fine. She had a slight bruise on her head, but the injury was inarguably minor. The prosecutor successfully convinced the jury that the serious-physical-harm element had been proved by focusing on Massey's statement to police that she called 911 because she was afraid that her child might die. But a mother's concern about her child's welfare, while erroneously believing that her child could die from a slight injury, does not transform that slight injury into physical harm that carries a substantial risk of death. There is no dispute that Jasmine sustained only a minor bruise on her head. The prosecution certainly did not prove the element of serious physical harm beyond a reasonable doubt, and Massey could have been convicted for nothing more than a misdemeanor.

■ But Massey should not have been convicted at all. The state had the burden to prove beyond a reasonable doubt that Massey recklessly violated a duty of care to Jasmine, creating a substantial risk to her health or safety. "Recklessness" is defined in R.C. 2901.22(C): "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."

---

**6.** R.C. 2919.22(E)(2)(c); *State v. Miley* (1996), 114 Ohio App.3d 738, 684 N.E.2d 102.

The evidence adduced at trial was insufficient to show beyond a reasonable doubt that Massey "perversely" disregarded a known risk that her conduct would likely cause a certain result. Only when Jasmine fell from the potty chair the second time did Massey notice that she was not responsive and believe that something was wrong with her. After Jasmine fell the second time, Massey immediately called 911 for help.

From the record, it is difficult even to determine the state's theory as to what Massey did to endanger Jasmine. A parent would certainly be guilty of endangering her child if she did not remove her child from a bathtub after observing the child submerged. Massey, however, took Jasmine out of the tub and placed her on the potty chair. After Jasmine fell over and hit her head, Massey probably would have been better served to examine her child more closely for injury, but repositioning Jasmine on the potty chair cannot be viewed as likely to cause a certain result—Jasmine falling and hitting her head again. In Massey's statement to police, which was the only evidence that was properly admitted for the jury's consideration, and on which the state relied for conviction, Massey asserted that she did not realize anything was wrong with Jasmine until she fell over the second time. At that point, Massey noticed that the child was not responsive and called 911 immediately.

The state did not prove that Massey's actions were reckless beyond a reasonable doubt. Further, we cannot see how Massey's actions created a substantial risk to Jasmine's health or safety. "Substantial risk" is defined in R.C. 2901.01(A)(8): " 'Substantial risk' means a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." Within the context of the evidence put on at trial, when Massey placed her child on the potty chair the second time, she did not recklessly violate a duty of care that created a strong possibility that the child would fall again. Massey did not even realize that the child was in danger at that time.

Further, even if the state relied on the interrogating officer's testimony that Massey told him, during her hours at the police station before her ten-minute statement was actually recorded, that she left the bathroom for between thirty seconds and four minutes to take care of Justin while Jasmine was in the tub, we must reach the same conclusion. Leaving a two-and-one-half-year-old child in a bathtub for any length of time is imprudent and possibly negligent. But we refuse to hold that leaving a child in a tub for between thirty seconds and four minutes to care for another child, while remaining in the same apartment, with nothing more, can be criminal. If such a result were possible, undoubtedly the majority of parents in this county would be guilty of child endangering—at least

for acts of similar culpability. "We recognize that appellant's behavior may have caused some speculative risk to her child; however, we hold that her conduct did not, under the circumstances of this case, create a strong possibility that her child would be harmed."[7]

There was insufficient evidence adduced at trial to support Massey's conviction for child endangering. Therefore, Massey's first two assignments are sustained.

Massey's third assignment, in which she argues that the verdict was against the manifest weight of the evidence, is rendered moot by our determination that the evidence was insufficient. The same holds true for her fourth assignment, in which she claims that improper evidentiary rulings amounted to prejudicial error.

Massey was wrongly convicted for child endangering, ironically, because she was concerned enough about her child to call 911. Parents are confronted with many hazards in the demanding job of raising children. Not every injury to a child is caused by a parent's criminal act.[8] The judgment is reversed and Massey is discharged.

*Judgment reversed
and defendant discharged.*

SUNDERMANN, P.J., concurs.

HILDEBRANDT, J., concurs in judgment only.

---

7. *State v. Boone* (Aug. 14, 1996), Hamilton App. No. C–950427, unreported, 1996 WL 454813 (holding that a mother's method of disciplining her seven-year-old child by driving away and leaving him in a K–Mart parking lot for fifteen minutes did not, as a matter of law, create a *substantial* risk to the child's health or safety).

8. See, *e.g., State v. Bennett* (July 13, 1995), Cuyahoga App. No. 68039, unreported, 1995 WL 415193.