[Cite as *State v. Shannon*, **2017-Ohio-31.**]

COURT OF APPEALS
MUSKINGUM COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. Sheila G. Farmer, P.J. |
|  | : | Hon. W. Scott Gwin, J. |
| Plaintiff-Appellee | : | Hon. Craig R. Baldwin, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. CT2016-0017 |
| LISA C. SHANNON | : |  |
|  | : |  |
| Defendant-Appellant | : | O P I N I O N |

CHARACTER OF PROCEEDING:     Criminal appeal from the Muskingum County Court, Case No. 1500221

JUDGMENT:     Affirmed in part; reversed in part and remanded

DATE OF JUDGMENT ENTRY:     January 5, 2017

APPEARANCES:

For Plaintiff-Appellant

GERALD ANDERSON II
Assistant Prosecuting Attorney
27 North Fifth St., P.O. Box 189
Zanesville, OH 43702-0189

For Defendant-Appellee

MILES FRIES
320 Main Street
Zanesville, OH 43702

*Gwin, J.,*

{¶1} Appellant Lisa C. Shannon ["Shannon"] appeals her convictions for Child Endangering and Obstructing Official Business after a bench trial in the Muskingum County Court.

*Facts and Procedural History*

{¶2} Shannon has been a licensed foster parent and a teacher for a number of years in Muskingum County. "Jane Doe," a minor child was placed in Shannon's care in March 2015, residing in the home with Shannon's two children, "Eve Doe" and "Adam Doe."

{¶3} In the summer 2014, Shannon asked Candy Emmert, a Muskingum County Children Services ("MCCS") adoption supervisor, if her boyfriend, W. L. would qualify to be a household member. At that time, Emmert did a background check and due in part to W.L.'s criminal conviction for a felony of the fourth degree in December of 2002, Emmert informed Shannon that he would not qualify to become a member of her household until June of 2017. (T. at 80-83). The background check did not reveal any domestic violence convictions for W.L. nor any convictions for child abuse or child endangering. (T. at 97). W.L. has not been accused, or convicted of any offenses involving physical violence. The felony conviction was not an absolute bar to placement of children in Shannon's home. (T. at 98). Nor was the conviction one that would prohibit W.L. from staying in the home several nights a week. (T. at 84-85). In fact, MCCS have placed children in the homes of individuals who have been convicted of felonies in the past. (T. at 99-100).

{¶4} Shannon knew that she would not be able to continue as a foster parent if W.L. lived in the home or if she were to marry him. (T. at 83). Shannon married W. L. in October 2014.

{¶5} On March 13, 2015, Shannon contacted Emmert to inform her of bruising that she had found on Jane Doe's buttocks. Shannon indicated that she noticed the bruising in the morning when she got her up to change the child. Shannon was not sure how the child got the mark on her bottom. Shannon could only recall that the child had fallen off the couch and onto some "Mega Blocks." After reporting this, Shannon called the doctor's office to schedule a time to bring the child in to be examined.

{¶6} Dr. Gerald Tiberio examined Jane Doe on March 16, 2015. (T. at 118). He was provided with an explanation that the child had fallen off a couch onto some Mega Blocks. (T. at 118). Dr. Tiberio noted that the bruising had square angles, which was consistent with blocks causing the bruising; however, due to the intensity of the bruising he felt concerned and sent the child the Advocacy Center at Nationwide Children's Hospital.

{¶7} Dr. Meagan Letson examined Jane Doe on March 17, 2015. (T. at 41; 44). Dr. Letson ran blood tests to rule out any bleeding disorders that would predispose the child to bruising easily. Dr. Letson testified that the bruising was very extensive and on two separate areas of the body which normally do not see accidental bruising or injury. While Dr. Letson admitted that Jane Doe's injuries could be accidental, she stated the location is rare and she testified to a medical degree of certainty that physical abuse caused the bruising on Jane Doe.

{¶8}   Krista Decker, a preschool teacher at Zanesville City Schools testified she worked with Shannon at Zane Grey Elementary for about eight years.  On March 25, 2015, Shannon told her that there was an investigation concerning the child that had been placed with her.  Shannon told Decker that Jane Doe had rolled off the couch and onto a block and that there were some markings on her.  Shannon said nothing about a detective coming to talk to her nor did she ask her to say to the police that Jane Doe had been at the school.

{¶9}   Rebecca Bracken, another preschool teacher at Zane Grey Elementary testified she worked with Shannon and had known her for several months.  Shannon told her of the investigation.  Bracken recalled Shannon telling her that one of the foster children had fallen off the couch, had an emblem of blocks on her and that the child had been taken to Columbus to check everything out and make sure everything was okay.  Bracken did not remember the entirety of the conversation.  Bracken did remember Shannon saying that if a detective were to come to school would she let them know that Shannon had the child with her on that Monday of the week being investigated.  Bracken did not tell the detective that Shannon had Jane Doe with her at school on the day in question.

{¶10}   Detective Brad Shawger testified that Muskingum County Children Services referred the matter to him.  His investigation included interviews with Shannon, W. L., Shannon's children, Children Services' workers at both Muskingum and Coshocton counties, and the two teachers at Zane Grey Elementary.  He went to Shannon's home and took photographs of the Mega Blocks that Shannon said had caused the injuries.

{¶11}   During her interview, Shannon initially stated that W. L. was her boyfriend but during the course of the interview admitted that they had been married in October

2014. She explained that he does not reside with her full time but does stay there between one to four days per week. Shannon first told Shawger W.L. had never watched the child by himself. Shannon initially said that Jane Doe had been at school with her during the week of the incident. However, she eventually admitted that had not been the case. Shannon admitted that she had not taken Jane Doe to school and that W. L. had watched her on Monday, Tuesday, part of Wednesday, part of Thursday, and part of Friday. She also acknowledged that she had not disclosed to Children Services that she had been married to W.L.

{¶12} A complaint was filed against Shannon alleging that she committed Child Endangering, one count in violation of R.C. 2919.22(A) and another count in violation of R.C. 2919.22(B)(1), misdemeanors of the first degree, two counts of Falsification, in violation of R.C. 2921.13(A)(3), misdemeanors of the first degree and one count of Obstructing Official Business, in violation of R.C. 2921.31(A), a misdemeanor of the second degree.

{¶13} Shannon waived her right to a jury trial. The state dismissed the one count of Child Endangering in violation of R.C. 2919.22(B)(1) that dealt specifically with child abuse during the course of the bench trial. (T. at 113).

{¶14} On March 16, 2016, the Court found Shannon guilty on the remaining count of Child Endangering and on the count of Obstructing Official Business; Shannon was found not guilty of both counts of Falsification.

*Assignments of Error*

{¶15} Shannon raises three assignments of error,

{¶16} "I. THE CONVICTION FOR CHILD ENDANGERING WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE WHEN THE STATE FAILED TO PRODUCE

EVIDENCE THAT THE APPELLANT CREATED A SUBSTANTIAL RISK TO THE HEALTH OR SAFETY OF A CHILD.

{¶17} "II. THE CONVICTION FOR OBSTRUCTING OFFICIAL BUSINESS WAS NOT SUPPORTED BY SUFFICIENT EVIDENCE BECAUSE THE STATE FAILED TO PRODUCE EVIDENCE THAT A PUBLIC OFFICIAL WAS HAMPERED OR IMPEDED IN THE PERFORMANCE OF OFFICIAL DUTIES.

{¶18} "III. THE TRIAL COURT ERRED IN PERMITTING THE STATE'S EXPERT WITNESS TO TESTIFY TO AN OPINION THAT HAD NOT BEEN DISCLOSED PRIOR TO TRIAL."

I.

{¶19} In her first assignment of error, Shannon challenges the sufficiency of the evidence. Shannon further contends her conviction for endangering children is against the manifest weight of the evidence produced at trial.

{¶20} Our review of the constitutional sufficiency of evidence to support a criminal conviction is governed by *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), which requires a court of appeals to determine whether "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Id.; see also *McDaniel v. Brown*, 558 U.S. 120, 130 S.Ct. 665, 673, 175 L.Ed.2d 582(2010) (reaffirming this standard); *State v. Fry*, 125 Ohio St.3d 163, 926 N.E.2d 1239, 2010–Ohio–1017, ¶146; *State v. Clay*, 187 Ohio App.3d 633, 933 N.E.2d 296, 2010–Ohio–2720, ¶68.

{¶21} Weight of the evidence addresses the evidence's effect of inducing belief. *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *superseded by*

*constitutional amendment on other grounds as stated by State v. Smith,* 80 Ohio St.3d 89, 684 N.E.2d 668, 1997-Ohio–355. Weight of the evidence concerns "the inclination of the greater amount of credible evidence, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the greater amount of credible evidence sustains the issue, which is to be established before them. Weight is not a question of mathematics, but depends on its effect in inducing belief." (Emphasis sic.) Id. at 387, 678 N.E.2d 541, *quoting* Black's Law Dictionary (6th Ed. 1990) at 1594.

{¶22} When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the fact finder's resolution of the conflicting testimony. Id. at 387, 678 N.E.2d 541, *quoting Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982). However, an appellate court may not merely substitute its view for that of the jury, but must find that "'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721 (1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "'the exceptional case in which the evidence weighs heavily against the conviction.'" Id.

"[I]n determining whether the judgment below is manifestly against

the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts.

* * *

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

**{¶23}** In the present case, Shannon was charged with and convicted of child endangering in violation of R.C. 2919.22(A). R.C. 2919.22(A) provides in relevant part:

(A) No person, who is the parent, guardian, custodian, person having custody or control, or person in loco parentis of a child under eighteen years of age or a mentally or physically handicapped child under twenty-one years of age, shall create a substantial risk to the health or safety of the child, by violating a duty of care, protection, or support…

**{¶24}** R.C. 2919.22(A) is aimed at preventing acts of omission or neglect. See, *e.g., State v. Sammons*, 58 Ohio St.2d 460, 391 N.E.2d 713(1979), *appeal dismissed*, 444 U.S. 1008, 100 S.Ct. 655, 62 L.Ed.2d 637(1980); *State v. Kamel*, 12 Ohio St.3d 306, 308, 466 N.E.2d 860(1984); Committee comment to R.C. 2919.22. Although not stated in R.C. 2919.22, recklessness is the culpable mental state for the crime of child endangering. *State v. O'Brien*, 30 Ohio St.3d 122, 508 N.E.2d 144(1987).

**{¶25}** Where a defendant is charged with a violation of R.C. 2919.22(A), the

prosecution must prove that the defendant: (1) was the parent, guardian, custodian, person having custody or control, or person in loco parentis of the subject child; (2) recklessly created a substantial risk to the health or safety of the child; and (3) created that risk by violating a duty of protection, care or support.

**{¶26}** R.C. 2901.02, provides,

(C) A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

**{¶27}** The Ohio Supreme Court has defined reckless conduct as,

Reckless conduct is characterized by the conscious disregard of or indifference to a known or obvious risk of harm to another that is unreasonable under the circumstances and is substantially greater than negligent conduct. *Thompson,* 53 Ohio St.3d at 104–105, 559 N.E.2d 705, adopting 2 Restatement of the Law 2d, Torts, Section 500, at 587 (1965); see also Black's Law Dictionary 1298–1299 (8th Ed.2004) (explaining that reckless conduct is characterized by a substantial and unjustifiable risk of harm to others and a conscious disregard of or indifference to the risk, but the actor does not desire harm).

*Anderson v. Massillon,* 134 Ohio St.3d 380, 2012-Ohio-5711, 983 N.E.2d 266, ¶34.

**{¶28}** To satisfy the second element of a violation of R.C. 2919.22(A), recklessness must create a "substantial risk" to the health and safety of the child. A "substantial risk" is "a strong possibility, as contrasted with a remote or significant possibility, that a certain result or circumstance may occur." R.C. 2901.01(H). See, also, *Kamel,* 12 Ohio St.3d 308, 466 N.E.2d 860.

**{¶29}** The state's circumstantial evidence does not prove that Shannon recklessly violated a duty to protect Jane Doe from abuse or to seek treatment for the abuse. The culpability element of a violation of R.C. 2919.22(A) is recklessness, which is the disregard of a known risk. Therefore, for Shannon to have recklessly violated a duty to protect Jane Doe from abuse, she had to either know of the abuse and do nothing or be reckless in not discovering the abuse.

**{¶30}** In the case at bar, the state infers that W.L. caused Jane Doe's injuries. The state further infers that Shannon was reckless in leaving the child alone with W.L. because the "rules" prohibited W.L. from becoming a member of Shannon's household until 2017 and because he has a fourth degree felony conviction from June 2002.

**{¶31}** The state presented no evidence that W.L. had abused or endangered any child in the past. The state presented no evidence that Shannon should have known or suspected that W.L. would injure the child. The particular rules upon which the MCCS agency relied to exclude W.L. from Shannon's household until 2017 were never identified or admitted into evidence. What the evidence does disclose is MCCS was aware that Shannon and W.L. had a relationship, he did stay at the home and he did have contact with all of the children in the home. This did not cause MCCS to remove any child from

Shannon's home nor would it prevent placement of additional foster children in Shannon's home.

{¶32} We agree the injuries to Jane Doe are troublesome. However, the state was required to produce sufficient evidence if it wished to convict Shannon of child endangerment, and it has not done so. Shannon contacted MCCS and informed the caseworker about the bruising. Shannon scheduled a doctor appointment for the child and cooperated with the recommendations of the physicians.

{¶33} While Shannon's actions may have been imprudent or even negligent, we cannot say that by leaving the child with W.L. Shannon consciously disregarded or was indifferent to a known or obvious danger or with heedless indifference to the consequences, she disregarded a substantial and unjustifiable risk. W.L. was not known to Shannon to ever have caused injury to another child. As one Ohio Court of Appeals noted, if "imprudent and possibly negligent" conduct were sufficient to expose a caregiver to criminal liability for child endangerment, "undoubtedly the majority of parents in this county would be guilty of child endangering—at least for acts of similar culpability." *State v. Massey*, 128 Ohio App.3d 438, 715 N.E.2d 235, 238–39 (1st Dist. 1998) (reversing child abuse conviction where two-and-a-half-year-old child was left in a bathtub between thirty seconds and four minutes, and stating that although there might have been some speculative risk to child, the mother's conduct did not create a strong possibility of harm).

{¶34} Further, the state was required to prove beyond a reasonable doubt a strong possibility existed that Jane Doe would be injured by leaving her in W.L.'s care. While Shannon's actions may have created a speculative risk to Jane Doe's safety, mere speculation about what might have happened is insufficient to show that there was a strong

possibility that an event might occur. *Eastlake v. Corrao*, 11th Dist. Lake No. 2002-L-094, 2003-Ohio-2373, ¶ 17.

{¶35} After considering possible duties that Shannon may have recklessly violated, we find that reasonable minds could only reach the conclusion that the evidence failed to prove beyond a reasonable doubt that Shannon recklessly violated a duty of protection, care, or support that created a substantial risk to the health or safety of Jane Doe.

{¶36} Accordingly, Shannon's first assignment of error is sustained. Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, give an appellate court the power to affirm, reverse, or modify the judgment of an inferior court. Accordingly, Shannon's conviction and sentence on Counts 1, endangering children is vacated, and this case is remanded for proceedings in accordance with our opinion and the law.

II.

{¶37} In her second assignment of error, Shannon challenges the sufficiency of the evidence. Shannon further contends her conviction for obstructing official business children is against the manifest weight of the evidence produced at trial.

{¶38} R.C. 2921.31, Obstructing Official Business provides,

(A) No person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful duties.

{¶39} In order to sustain a conviction for obstructing official business, the state

must prove beyond a reasonable doubt that the defendant acted purposely. R.C. 2901.22(A) provides,

A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature.

**{¶40}** The Ohio Supreme Court has held,

The making of an unsworn false oral statement to a public official with the purpose to mislead, hamper or impede the investigation of a crime is punishable conduct within the meaning of R.C. 2921.13(A)(3) [Falsification] and 2921.31(A). (*Columbus v. Fisher* [1978], 53 Ohio St.2d 25, 7 O.O.3d 78, 372 N.E.2d 583, and *Dayton v. Rogers* [1979], 60 Ohio St.2d 162, 14 O.O.3d 403, 398 N.E.2d 781, *overruled*.)

*State v. Lazzaro,* 76 Ohio St.3d 261, 1996-Ohio-397, 667 N.E.2d 384, paragraph one of the syllabus.

**{¶41}** In the case at bar, Shannon was found not guilty of count 3 of the Complaint alleging falsification with respect to her statements that her and W.L. were not married and he was not living in the Shannon household. (T. at 213). Shannon was found not guilty of count 4 of the Complaint alleging falsification with respect to her statements that she had taken Jane Doe to school with her. (T. at 213-214).

**{¶42}** Count 5 of the Complaint alleged obstructing official business with respect to Shannon's asking co-workers to tell the police that Jane Doe had been at school with

her when she had not been at school.  (T. at 214).

{¶43}  In the case at bar, Krista Decker a co-worker of Shannon testified that she has known Shannon to bring her children to school with her.  (T. at 137).  Decker testified that Shannon "informed me that there was an investigation that there was some concerns and things addressed that - - with the child that was placed with them at that time.  Yes." (T. at 139).  When asked what Shannon had told her, Decker testified, "Just that something had happened, that the little [child] had rolled off the couch or something and rolled onto like Lego or waffle blocks and there was some markings on the child…And so they started an investigation." (T. at 139).  The following exchange then took place,

Q.      Did she tell you about a possibly a detective coming to talk to you?

A.      No, she didn't.  I don't recall her saying that there would be a detective.  I –

Q.      She didn't say if someone asked about [Jane Doe] being at school of anything of that nature?

* * *

Q.      On March 25th, did Lisa Shannon talk to you about or ask you to say anything specific about a child being with her that day or the day before?

A.      I do not – no, she did not.

T. at 139-140.

{¶44}  Clearly, Shannon did not say anything to Decker and Decker not say anything to Detective Shawger that misled, hampered or impeded the investigation.

{¶45}  Rebecca Braken, a co-worker of Shannon testified,

Q.      Did Lisa say anything about a detective?

A.      Yes.   She asked me - -I do remember that she said, if a detective were to come to school, would you please let them know that I did have that said child with me on that Monday of the week or something like that.  I think it was a Monday of that - - that week that I had been investigated or questioned.

(T. at 146-147).  Braken testified that she did not lie to the police on Shannon's behalf and that she was completely honest with the detective.  (T. at 148-149).

**{¶46}** Detective Shawger testified that Shannon initially told him that she had taken Jane Doe to school with her.  Detective Shawger testified that he did not discuss and was not given any names of co-workers by Shannon that would verify she had brought the child to work.  (T. at 158).  Detective Shawger testified he did go to the school and interview Braken and Decker.  Detective Shawger then interviewed Shannon a second time.  The video of the second interview was played for the trial court.

**{¶47}** Detective Shawger testified that Shannon's statements that she had taken the child to school impeded his investigation because,

I wouldn't have had to interview her twice.  I wouldn't have had to go - -wouldn't have had to go back to the school and talk to the teachers and get them involved and talk to all those people.  I mean, the investigation would have been - - at least she would have been honest, and it would have been a whole lot quicker.

(T. at 189-190).  In the second interview, Shannon admitted to Detective Shawger that she had not taken Jane Doe to school.

**{¶48}** Accordingly, Shannon lied to Detective Shawger.  She attempted to enlist

Braken to corroborate her lie. Detective Shawger testified his investigation was misled and impeded. Viewing the evidence in the case at bar in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that Shannon obstructed official business.

{¶49} We hold, therefore, that the state met its burden of production regarding each element of the crime of obstructing official business and, accordingly, there was sufficient evidence to support Shannon's conviction.

{¶50} As an appellate court, we are not fact finders; we neither weigh the evidence nor judge the credibility of witnesses. Our role is to determine whether there is relevant, competent and credible evidence, upon which the fact finder could base his or her judgment. *Cross Truck v. Jeffries*, 5th Dist. Stark No. CA–5758, 1982 WL 2911(Feb. 10, 1982). Accordingly, judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Construction*, 54 Ohio St.2d 279, 376 N.E.2d 578(1978). The Ohio Supreme Court has emphasized: "'[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.'" *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E. 2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978). Furthermore, it is well established that the trial court is in the best position to determine the credibility of witnesses. *See, e.g., In re Brown*, 9th Dist. No. 21004, 2002–Ohio–3405, ¶ 9, *citing State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d

212(1967).

{¶51} Ultimately, "the reviewing court must determine whether the appellant or the appellee provided the more believable evidence, but must not completely substitute its judgment for that of the original trier of fact 'unless it is patently apparent that the fact finder lost its way.'" *State v. Pallai*, 7th Dist. Mahoning No. 07 MA 198, 2008-Ohio-6635, ¶31, *quoting State v. Woullard*, 158 Ohio App.3d 31, 2004-Ohio-3395, 813 N.E.2d 964 (2nd Dist. 2004), ¶ 81. In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe." *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002-Ohio-1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).

{¶52} The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230, 227 N.E.2d 212(1967), paragraph one of the syllabus; *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, 960 N.E.2d 955, ¶118. *Accord, Glasser v. United States*, 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *Marshall v. Lonberger*, 459 U.S. 422, 434, 103 S.Ct. 843, 74 L.Ed.2d 646 (1983).

{¶53} The judge as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the [trier of fact] may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP-739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09-1236, 1996

WL 284714 (May 28, 1996). Indeed, the [trier of fact] need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver,* 10th Dist. Franklin No. 02AP-604, 2003-Ohio-958, ¶21, *citing State v. Antill*, 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke,* 10th Dist. Franklin No. 02AP-1238, 2003-Ohio-2889, *citing State v. Caldwell*, 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks,* 61 Ohio St.3d 259, 272, 574 N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).*

**{¶54}** In the case at bar, the judge heard the witnesses, viewed the evidence and heard Shannon's arguments.

**{¶55}** We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386-387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. The judge neither lost his way nor created a miscarriage of justice in convicting Shannon of the charge.

**{¶56}** Based upon the foregoing and the entire record in this matter, we find Shannon's conviction is not against the sufficiency or the manifest weight of the evidence. To the contrary, the judge appears to have fairly and impartially decided the matters before him. The judge as a trier of fact can reach different conclusions concerning the credibility of the testimony of the state's witnesses and Shannon's arguments. This court will not disturb the trier of fact's finding so long as competent evidence was present to support it.

*State v. Walker*, 55 Ohio St.2d 208, 378 N.E.2d 1049 (1978). The judge heard the witnesses, evaluated the evidence, and was convinced of Shannon's guilt.

**{¶57}** Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crime of obstructing official business for which Shannon was convicted.

**{¶58}** Shannon's second assignment of error is overruled.

III.

**{¶59}** In her third assignment of error, Shannon contends the state called Dr. Megan Letson as an expert witness to try to establish the element of causation regarding the bruises. Dr. Letson stated to "a reasonable degree of medical certainty" that they were the result of physical abuse. Shannon's counsel objected to her response, asking it be stricken, because that opinion was inconsistent with what was set forth in the report provided as part of the state's discovery responses. That opinion was not disclosed prior to trial, which constituted a violation of Criminal Rule 16(K).

**{¶60}** In light of our disposition of Shannon's first assignment of error, we find Shannon's third assignment of error moot. The established policy in Ohio prohibits appellate courts from rendering advisory opinions. *White Consolidated Industries v. Nichols*, 15 Ohio St.3d 7, 471 N.E.2d 1375(1984); *Cascioli v. Central Mut. Ins. Co.*, 4 Ohio St.3d 179, 183, 448 N.E.2d 126(1983); *Armco, Inc. v. Pub. Util. Comm.*, 69 Ohio St.2d 401, 406, 433 N.E.2d 923(1982).

{¶61} For the foregoing reasons, the judgment of the Muskingum County Court is affirmed in part, and reversed in part.  Pursuant to Section 3(B) (2), Article IV of the Ohio Constitution and R.C. 2953.07, the conviction and sentence on Counts 1, Endangering Children, is vacated, and this case is remanded for proceedings in accordance with our opinion and the law.

By Gwin, J.,

Farmer, P.J., and

Baldwin, J., concur