[Cite as *State v. Crossty*, 2017-Ohio-8382.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-170085 |
| | | TRIAL NO. B-1604044 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| LEVENSKI CROSSTY, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:  Affirmed

Date of Judgment Entry on Appeal:  November 1, 2017

*Joseph T. Deters*, Hamilton County Prosecuting Attorney, and *Sean M. Donovan*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Brian T. Goldberg*, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}    Following a jury trial, Levenski Crossty was convicted of aggravated burglary, felonious assault, and abduction.   The trial court sentenced him to consecutive prison terms for an aggregate of 20 years.   He now appeals.

*Facts and Procedural History*

{¶2}    Jessica Wilson, the mother of Crossty's two-year-old daughter, was house-sitting for a friend who was out of town.   Wilson and her four young children were at the home when Crossty entered, uninvited, through a window.   Wilson did not know Crossty had entered the home until she heard him screaming at her while she was giving one of the children a bath.   Wilson shut and locked the bathroom door, but Crossty forced the door open.

{¶3}    Before Wilson could call 911, Crossty grabbed her and struck her in the head.   She was apparently knocked unconscious because the next thing she recalled was that she was sitting in the passenger seat of her brother's car with her two-year-old daughter on her lap and three of her older children in the back seat.   Crossty was driving the car.

{¶4}    As he was driving, Crossty continually screamed at Wilson and struck her face, arm, and head.   This continued over the course of several hours.

{¶5}    Wilson said that Crossty drove them to a park, where they all got out of the car for a short time.   Wilson was scared and wanted to get away from Crossty, but she did not leave because she feared for the safety of her children.

{¶6}    Then they all got back into the car and Crossty drove Wilson and the children to his sister's home.   His sister was not there.   In an attempt to escape from Crossty, Wilson ran to a neighbor's home, pounded on the door, and yelled for help.

No one responded. Crossty grabbed Wilson, but she held onto a pole. At some point, Crossty bit Wilson's hand.

{¶7} Crossty got the kids back into the car and threatened to leave with them, so Wilson also got back into the car. Wilson was scared for her children and for herself, but had no phone to call for help, so she repeatedly asked Crossty to drop the children off somewhere. Crossty refused and continued to scream and to strike Wilson. They had been together for several hours at that point.

{¶8} Then Wilson told Crossty that the children needed to eat. When Crossty pulled into a fast-food restaurant's drive-through lane, Wilson scooped up her two-year-old daughter and escaped from the car. Wilson ran around the car and tried to hand the child to a restaurant employee through the drive-through window, but Crossty grabbed the child, put her in the car, and drove off, leaving a hysterical Wilson behind.

{¶9} Restaurant employees called the police. An employee testified that Wilson's eye was huge, swollen, black, and bloody.

{¶10} Wilson was taken to the hospital, where she remained several hours for treatment. Police detectives went to the hospital to interview Wilson and to photograph her injuries. Wilson showed no signs of intoxication.

{¶11} In his interview with the police, Crossty said that he and a friend had gone to the home where Wilson was house-sitting to have dinner. After his friend left, Crossty took Wilson and four of her children to a park. Crossty said that Wilson was drunk, and that he confronted her about cheating on him. He said that when they got to his sister's home, Wilson ran to a neighbor's home, banged on the door, and yelled for help. So Crossty grabbed her, and had to "get rough" with her to get her back in the car. He admitted that he had hit her a few times in the face, but said that he had just used "little flicks" or "little slaps."

{¶12} After Crossty was arrested, he called Wilson from jail several times to convince her not to appear for the trial, so that the case against him would be dismissed.

{¶13} Crossty was indicted for aggravated burglary, felonious assault, theft (of the car), five counts of abduction (for Wilson and the four children), and four counts of kidnapping (for the children).

{¶14} Following the trial, Crossty was convicted of aggravated burglary, felonious assault, and a single count of abduction involving Wilson. The trial court granted Crossty's Crim.R. 29 motion for a judgment of acquittal on the theft charge, and the jury found him not guilty of the remaining charges.

### Weight and Sufficiency

{¶15} In his first assignment of error, Crossty challenges the weight and sufficiency of the evidence supporting his convictions. In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crimes beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶16} ***Aggravated Burglary.*** To find Crossty guilty of aggravated burglary in violation of R.C. 2911.11(A)(1), the jury had to find that, by force, stealth, or deception, he trespassed in an occupied structure, when a person other than an

accomplice was present, with purpose to commit in the structure any criminal offense and that he inflicted, attempted, or threatened to inflict physical harm on another. Crossty argues that the state failed to prove the element of trespass because there was no evidence that the owner did not consent to his presence in the home, or that Wilson, whom he claims invited him in, had revoked her prior consent.

{¶17} Trespass occurs when a person, without privilege to do so, knowingly enters or remains on the land or premises of another. *See* R.C. 2911.21(A)(1). Wilson testified that she had been house-sitting for a few days while her friend, the homeowner, was away. Although Crossty had visited Wilson at the friend's home on two prior occasions in the previous three to five days, Wilson testified that on the day of the offense, she had not invited Crossty over or given him permission to enter the home. He entered the home through its front window without Wilson's knowledge or consent. Under these circumstances, the jury could reasonably infer that he had entered the home without privilege or consent.

{¶18} And even if Crossty had entered the home lawfully, once he began to assault Wilson, a "powerful inference" arises that the privilege to remain was revoked and that he had become a trespasser. *See State v. Steffen*, 31 Ohio St.3d 111, 115, 509 N.E.2d 383 (1987); *State v. Clark*, 74 Ohio App.3d 151, 161, 598 N.E.2d 740 (1st Dist.1991); *State v. Trigg*, 2d Dist. Montgomery No. 26757, 2016-Ohio-2752, ¶ 9-10. Thus, the conviction for aggravated burglary was supported by sufficient evidence.

{¶19} *Felonious Assault.* To find that Crossty committed felonious assault in violation of R.C. 2903.11(A)(1), the jury had to find that he knowingly caused serious physical harm to Wilson. He argues that the state failed to prove the serious-physical-harm element.

{¶20} R.C. 2901.01(A)(5) provides that "serious physical harm" means any of the following:

(a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;

(b) Any physical harm that carries a substantial risk of death;

(c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;

(d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶21} The degree of harm required to establish "serious" physical harm "is not an exact science, particularly when the definition includes terms such as 'substantial,' 'temporary,' 'acute,' and 'prolonged.' " *State v. Irwin*, 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, ¶ 37. The extent or degree of a victim's injuries is "normally a matter of the weight, rather than the sufficiency of the evidence." *Id.*, citing *State v. Salemi*, 8th Dist. Cuyahoga No. 81091, 2002-Ohio-7064, ¶ 34.

{¶22} Where wounds require stitches or staples or other manner of medical treatment to close them, courts have found sufficient evidence of serious physical harm as defined by R.C. 2901.05(A)(5)(d) and (e). *See State v. Reckers*, 1st Dist. Hamilton Nos. C-060451 and C-060640, 2007-Ohio-3679, ¶ 15-16; *State v. Studgions*, 8th Dist. Cuyahoga No. 94153, 2010-Ohio-5480, ¶ 10; *State v. McGuire*, 2d Dist. Montgomery No. 11443, 1989 WL 159206 (Dec. 27, 1989). Serious physical harm has been found where a victim sustained a bloody cut and significant swelling to the face, even when there was no evidence that stitches were required. *See State v.*

*Clark*, 8th Dist. Cuyahoga No. 104076, 2016-Ohio-5143, ¶ 22, citing *State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 WL 1010969 (July 20, 2000).

{¶23} Under certain circumstances, bruising can constitute serious physical harm because a bruise may satisfy the statutory requirement for temporary serious disfigurement. *State v. Jarrell*, 4th Dist. Scioto No. 08CA3250, 2009-Ohio-3753, ¶ 14, citing *State v. Worrell,* 10th Dist. Franklin No. 04AP-410, 2005-Ohio-1521, ¶ 47-51, *rev'd on other grounds, In re Ohio Criminal Sentencing Statutes Cases*, 109 Ohio St.3d 313, 2006-Ohio-2109, 847 N.E.2d 1174 (extensive bruising on the victim's lower back and hip for which she sought medical treatment); *State v. Krull*, 154 Ohio App.3d 219, 2003-Ohio-4611, 796 N.E.2d 979, ¶ 21 (12th Dist.) (extensive bruising on the victim's buttocks and legs, and a bloody cut); *but see State v. Massey*, 128 Ohio App.3d 438, 442, 715 N.E.2d 235 (1st Dist.) (a slight bruise on the victim's head was "inarguably minor").

{¶24} Here, Wilson testified that Crossty hit her repeatedly about the face and body, causing her pain with each blow. In addition, Crossty bit her hand. As a result of Crossty's beating, Wilson had to be treated at a hospital. Photographs depicted extensive bruising and swelling on Wilson's head, arms, hands, and back, deep abrasions on her hand, a gash on her scalp, and large swelling and a gash under her deeply blackened eye. The gash under Wilson's eye required medical tape to close the wound. Under these circumstances, a rational trier of fact could have found that Wilson suffered physical harm involving some temporary, serious disfigurement, permanent disfigurement, or acute pain that resulted in substantial suffering, as set forth in R.C. 2901.05(A)(5)(d) and (e). Therefore, we hold that the state presented sufficient evidence of serious physical harm for felonious assault.

{¶25} *Abduction.* To find Crossty guilty of abduction under R.C. 2905.02(A)(1), the jury was required to find that he had, without privilege to do so, by force or threat, removed Wilson from the place where she was found. Crossty

contends that the state failed to prove abduction because Wilson could not remember how she had gotten from the house into the car.

{¶26} This argument fails for several reasons. First, the jury was free to make the reasonable inference that Crossty's blow to Wilson's head was so severe that it knocked her out (or at least dazed her), whereupon he forcibly removed her from the house. Second, Crossty admitted that Wilson tried to escape from him at his sister's home, that she ran for help and was clinging to a pole to prevent him from moving her, and that he had "to get rough" to get her back into the car. This was sufficient evidence that Crossty had moved Wilson from the place where she was found, and had forcibly moved her into the car. Consequently, the conviction for abduction was supported by sufficient evidence.

{¶27} In addition to finding sufficient evidence to support the convictions, we conclude that the jury neither lost its way nor created a miscarriage of justice in convicting him of the offenses. This is not an "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, 678 NE.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). We overrule the first assignment of error.

### Jail Telephone Call

{¶28} In his second assignment of error, Crossty argues that the trial court erred by allowing the state to play a recording of a telephone call that he made to his mother from jail. He contends that the state failed to properly authenticate and establish a chain of custody for the recording. We review the court's admission of evidence for an abuse of discretion. *State v. Brand*, 1st Dist. Hamilton No. C-150590, 2016-Ohio-7456, ¶ 27, citing *State v. Noling*, 98 Ohio St.3d 44, 2002-Ohio-7044, 781 N.E.2d 88, ¶ 43.

{¶29} The authentication requirement is satisfied when the proponent presents foundational evidence or testimony from which a rational jury may determine that the evidence is what its proponent claims it to be. *State v. Mitchell*, 171 Ohio App.3d 225, 2007-Ohio-1696, 870 N.E.2d 228, ¶ 12 (8th Dist.). This burden is not great, and only requires a prima facie showing through direct or circumstantial evidence. *State v. Brown,* 1st Dist. Hamilton No. C-120327, 2013-Ohio-2720, ¶ 16.

{¶30} The chain of custody is part of the authentication and identification requirement in Evid.R. 901. *See State v. Taylor*, 8th Dist. Cuyahoga No. 98107, 2012-Ohio-5421, ¶ 36. The state need not prove an unbroken chain of custody for physical evidence to be admissible. *See State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 57. Any breaks in the chain of custody go to the weight, rather than the admissibility, of the evidence. *State v. Franklin*, 97 Ohio St.3d 1, 2002-Ohio-5304, 776 N.E.2d 26, ¶ 43. Establishing the chain of custody for physical evidence is more critical than establishing the chain of custody for voice recordings, where a witness may identify a voice on the recording "based upon hearing the voice at any time under circumstances connecting it with the alleged speaker." *See* Evid.R. 901(B)(5); *State v. Guyton*, 2016-Ohio-8110, 74 N.E.3d 939, ¶ 32 (11th Dist.); *see also Brown* at ¶ 17.

{¶31} Here, a police detective familiar with the local jail's recording system for inmate telephone calls testified that Crossty used another inmate's personal identification number ("PIN") to make the call from the jail. He stated that inmates are informed that every call is recorded. Because jail telephone records identify an inmate caller by PIN, inmates commonly use each other's PINs to attempt to conceal the calls that they make.

{¶32} The detective testified that after the first day of trial, Crossty used another inmate's PIN to call his mother. Call logs were searched for calls made to

9

Crossty's mother's telephone number, and a recording of a call made to that number that day was provided to the detective's unit. The detective listened to the recording and recognized Crossty's voice and Crossty's mother's voice because he had conducted a nearly 40-minute interview with Crossty and had heard both Crossty's and his mother's voices in numerous recordings of jail calls. Consequently, we hold that the state presented sufficient evidence to establish a reasonable likelihood that the recording was authentic, and that the trial court did not abuse its discretion in admitting the recording into evidence. We overrule the second assignment of error.

### *Consecutive Sentences*

{¶33} In his third assignment of error, Crossty argues that the trial court erred by imposing consecutive sentences. He contends that the record did not support the findings made by the court to impose consecutive sentences. This court will only modify or vacate a sentence pursuant to R.C. 2953.08(G)(2) if it clearly and convincingly finds either that the record does not support the mandatory sentencing findings or the sentence is otherwise contrary to law. *State v. White*, 2013-Ohio-4225, 997 N.E.2d 629, ¶ 11 (1st Dist.).

{¶34} First, Crossty claims that nothing in the record supported the court's finding that he had a prior criminal record because sentencing occurred immediately after the verdict, and before a presentence investigation could occur. However, at sentencing, defense counsel acknowledged that Crossty had a prior criminal record that included a 2008 felony conviction for receiving stolen property.

{¶35} Here, the trial court made the findings required by R.C. 2929.14(C) to impose consecutive sentences on the record and incorporated those findings into the sentencing entry. *See State v. Bonnell*, 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659, syllabus. The court further explained that it found Crossty "extremely

disturbing," "extremely violent," and "extremely dangerous." The court said that Crossty had "terrorized" Wilson, and described the beating of Wilson as "horrendous." In addition, the court found that Crossty had demonstrated no remorse.

{¶36} The record supports the court's mandatory findings and the sentences are not otherwise contrary to law. Consequently, we hold that the trial court did not err in imposing consecutive sentences. We overrule the third assignment of error and affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **MILLER, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.