[Cite as *State v. Revere*, 2020-Ohio-572.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| Plaintiff-Appellee, | : | No. 108386 |
| v. | : | |
| AUTO REVERE, | : | |
| Defendant-Appellant. | : | |

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** February 20, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-18-626296-A

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, Eben O. McNair, and Sean M. Kilbane, Assistant Prosecuting Attorneys, *for appellee.*

Edward M. Heindel, *for appellant.*

ANITA LASTER MAYS, P.J.:

{¶ 1} Defendant-appellant Auto Revere ("Revere") appeals his convictions and sentence for felonious assault, R.C. 2903.11(A)(1), a second-degree felony, with a one-year firearm specification; kidnapping, R.C. 2905.01(A)(3), a first-degree

felony, and possession of a dangerous ordnance, R.C. 2923.17(A), with forfeiture specifications. We affirm.

## I.  Background and Facts

{¶ 2}  Revere pleaded guilty to the cited charges arising from indictments for assaulting his 64-year-old mother who was strangled until she lost consciousness and then chained to a chair. Revere continued to terrorize his mother when she regained consciousness to the extent that she suffered incontinence. Revere's mother jumped from the second floor porch to escape. Defense counsel conceded that Revere had a prior violent felony.

{¶ 3}  Revere's mother was the only victim. The mother stated at the sentencing hearing that she forgives her son and that he is a good person who is loving and kind. "He did do some bad things to me. But my son snapped, and he lost control of his anger." (Tr. 124.) His mother explained that Revere's anger issues stem from parental child abuse that Revere believes his mother should have prevented.

{¶ 4}  Revere received a ten-year aggregate prison sentence. In its journal entry, the trial court determined:

> The court considered all required factors of the law. The court finds that prison is consistent with the purpose of R. C. 2929.11. The court imposes a prison sentence at the Lorain Correctional Institution of 10 year(s). State and defense argue merger of counts. In consideration of the arguments of both state and defense, and the facts of this case, the court rules that none of the counts shall merge for sentencing purposes. The defense objects to the court's ruling.
>
> Count 1 — 1 year prison sentence for the firearm specification and 8 year prison term for the underlying offense. 1 year prison sentence for

the firearm specification shall run prior to and consecutive with the underlying offense for a total of 9 years on Count 1.

Counts 2 — 8 year prison sentence.

Counts 4 — 12 month prison sentence.

Counts 1 and 4 shall run consecutive to each other for a total prison sentence of 10 years.

Count 2 shall run concurrent to counts 1 and 4 for a total aggregate prison sentence of 10 years.

Journal entry No. 107923147 (Mar. 20, 2019).

{¶ 5} Revere appeals the trial court's determination.

## II. Assignments of Error

{¶ 6} Revere presents three assigned errors:

I. The trial court erred when it failed to merge the kidnapping and felonious assault convictions as allied offenses of similar import.

II. The trial court erred when it imposed maximum and consecutive sentences on the felonious assault and possessing a dangerous ordnance.

III. The trial court erred when it accepted a guilty plea when the defendant was unable to answer basic questions such as "are you an American citizen?" The guilty plea was not made knowingly, intelligently, and voluntarily.

## III. Analysis

### A. Merger

{¶ 7} "When determining whether two offenses are allied offenses of similar import, we apply a de novo standard of review." *State v. Copeland*, 8th Dist. Cuyahoga No. 106988, 2019-Ohio-1370, ¶ 62, citing *State v. Williams*, 134 Ohio St. 3d 482, 2012-Ohio-5699, 983 N.E.2d 1245, ¶ 28.

{¶ 8} In *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, the Ohio Supreme Court explained that:

> When the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses. R.C. 2941.25(B).

*Id.* at ¶ 24.

{¶ 9} To determine whether the offenses merge under R.C. 2941.25(A), a court must ask

> how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance — in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

*Id.* at ¶ 25.

{¶ 10} Since the defendant's conduct is pivotal, we focus on the evidence adduced during trial, plea, and sentencing.

> When a defendant's conduct victimizes more than one person, the harm for each person is separate and distinct, and therefore, the defendant can be convicted of multiple counts. Also, a defendant's conduct that constitutes two or more offenses against a single victim can support multiple convictions if the harm that results from each offense is separate and identifiable from the harm of the other offense. We therefore hold that two or more offenses of dissimilar import exist within the meaning of R.C. 2941.25(B) when the defendant's conduct constitutes offenses involving separate victims or if the harm that results from each offense is separate and identifiable.

*Id.* at ¶ 26.

**{¶ 11}** Revere argues that the trial court should have merged his convictions for felonious assault and kidnapping. His mother was the only victim. In order to determine whether the offenses should merge, we must first determine whether each offense caused separate or identifiable harm, was committed separately, or was committed with separate animus or motivation.

**{¶ 12}** R.C. 2903.11(A)(1) provides that "[n]o person shall knowingly * * * [c]ause serious physical harm to another." *Id.* "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B). Revere strangled his mother until she was unconscious. Strangulation that reduced the mother's breathing until she lost consciousness and was unresponsive for an unknown period of time meets the mens rea and physical harm requirements of R.C. 2903.11(A)(1). *State v. Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 23, citing *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19.

**{¶ 13}** Kidnapping under R.C. 2905.01(A)(3) provides in pertinent part that

> [n]o person, by force, threat, or deception * * * shall remove another from the place where the other person is found or restrain the liberty of the other person * * * [t]o terrorize, or to inflict serious physical harm on the victim."

**{¶ 14}** Revere's mother told police that she called to tell her sister that she was going to Revere's home in case she could not be contacted. A discussion between Revere and his mother escalated. Revere put the mother in a "sleeper hold" and strangled her until she lost consciousness. (Tr. 128.) Revere's mother corrected

the state's advisement that she awakened to find her wrists and ankles tied up in metal chains to "[j]ust one ankle in a chain." (Tr. 128.)

{¶ 15} Police were also told that Revere headed downstairs with a gun when the sister arrived and honked her car horn. His mother was able to release the chains, jumped from the second-floor balcony into the front yard, and ran to her sister's car. They flagged down a police officer. Revere was arrested after a 45-minute stand-off with police. Metal chains with locks, a loaded revolver, and a sawed-off shotgun with ammunition were discovered during the police search. Medical reports documented swelling to the mother's face and wrists along with shoulder and hip pain.

{¶ 16} Revere's mother admitted that Revere strangled her and that she lost consciousness. The trial court asked her what happened after that. She responded "I don't want to talk about that over again. I made a statement." (Tr. 125.)

{¶ 17} The trial court ruled over the defense objections that the offenses did not merge:

> So in light of the arguments made by both the State and the Defense and in light of the facts of this case, it is this Court's position that none of the counts will merge for purposes of sentencing. Based on the arguments of both the State and the Defense, the Court finds that there were 3 separate offenses that occurred on February 8th of 2018. So my ruling is that Count 1, Count 2, and Count 4 will not merge for sentencing purposes.

(Tr. 140.)

{¶ 18} Revere cites this court's opinion in *State v. Florencio*, 8th Dist. Cuyahoga No. 107023, 2019-Ohio-104, to support his argument that the

strangulation and restraint of his mother constituted one continuous stream of conduct with the same animus.

{¶ 19} Florencio argued that the felonious assault and kidnapping charges should merge. This court found merit to the argument because

> the same acts constituted the commission of both the kidnapping and the felonious assault, which were committed against a single victim with no separate identifiable harm, and the offenses were not committed separately or with a separate animus. The offenses should have merged.

*Id.* at ¶ 18.

{¶ 20} *Florencio* is factually distinguishable for purposes of a *Ruff* analysis:

> Florencio and the victim were divorced. Florencio's son rented a neighboring house from the victim. Florencio came to the victim's house complaining that the water heater in the basement of the rental unit was not working. The victim [Florencio's former wife] tentatively followed Florencio toward the stairway leading into the basement of the rental unit. Sensing danger, the victim turned to leave when Florencio grabbed her arm and neck, stuck his thumb in her mouth, and held a gun to the victim's head. It is unclear whether the gun was loaded. Hearing the victim's screams for help, and thinking her mother's life was in danger, the victim's daughter grabbed her mother's handgun and went outside to confront Florencio. Florencio's son and another neighbor also arrived. Everyone told Florencio to drop his weapon, and the victim's daughter fired a shot into the air to that end. Florencio released the victim and fled when police were called.

*Id.* at ¶ 2.

{¶ 21} In contrast to the continuous, contemporaneous flow of events in *Florencio*, Revere strangled his mother until she lost consciousness. The mother did not know exactly how long she was unconscious. At some point thereafter, Revere placed his mother into a chair and chained her wrists and at least one ankle to the

chair to restrain her liberty.[1]  The mother told police that Revere planned to kill her and then drive over to the father's house and kill the father.  (Tr. 129.)

{¶ 22} The elements of felonious assault were met when Revere strangled his mother, rendering her unconscious.  The loss of consciousness constituted "temporary, substantial incapacity."  *Chambers*, 8th Dist. Cuyahoga No. 99864, 2014-Ohio-390, ¶ 23. The kidnapping elements were established when Revere decided to place his unconscious mother into the chair, restrain her with chains, and terrorize her to the point that she urinated on her clothing.  *State v. Wright*, 8th Dist. Cuyahoga No. 92344, 2009-Ohio-5229.

{¶ 23} Based on our de novo review of the evidence, we cannot say that the trial court erred when it determined that the offenses were committed with separate animus and  harm pursuant to *Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, at ¶ 26.

{¶ 24} The first assignment of error is overruled.

**B.  Sentencing**

{¶ 25} R.C. 2953.08 sets forth the parameters of an appellate court's review of felony sentences.  It includes categories of sentences that may be appealed such as consecutive sentences under R.C. 2953.08(C)(1) or a maximum sentence under R.C. 2953.08(A).

---

[1] According to the presentence-investigation report read by the trial court at the sentencing hearing, the mother said Revere began acting crazy and she believed he was going to kill her and steal her car.  However, in that report the mother claimed that she talked Revere into releasing the chains and she ran out of the home.

**{¶ 26}** The Ohio Supreme Court prescribed the current standard for appellate review of felony sentences:

> Applying the plain language of R.C. 2953.08(G)(2), we hold that an appellate court may vacate or modify a felony sentence on appeal only if it determines by clear and convincing evidence that the record does not support the trial court's findings under relevant statutes or that the sentence is otherwise contrary to law. In other words, an appellate court need not apply the test set out by the plurality in *State v. Kalish*, 120 Ohio St.3d 23, 2008-Ohio-4912, 896 N.E.2d 124.

*State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶ 1. If an appellate court finds in the defendant's favor, the appellate court "may increase, reduce, or otherwise modify a sentence * * * or may vacate the sentence and remand the matter to the sentencing court for resentencing." *State v. Pluhar*, 8th Dist. Cuyahoga No. 102012, 2015-Ohio-3344, ¶ 13.

**{¶ 27}** For a sentence to be contrary to law, the sentence must fall "outside the statutory range" for the offense or the record must reflect a failure by the trial court to "consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the sentencing factors in R.C. 2929.12." *State v. Lee*, 8th Dist. Cuyahoga No. 104190, 2016-Ohio-8317, ¶ 9, citing *State v. Hinton*, 8th Dist. Cuyahoga No. 102710, 2015-Ohio-4907, ¶ 10, citing *State v. Smith*, 8th Dist. Cuyahoga No. 100206, 2014-Ohio-1520, ¶ 13.

**{¶ 28}** There is no mandatory duty for a trial court to explain its analysis of the statutory sentences pursuant to our holding in *State v. Kronenberg*, 8th Dist. Cuyahoga No. 101403, 2015-Ohio-1020, ¶ 27. A trial court is only required to

indicate that the statutory factors have been considered. *Id.*, citing *State v. Wright*, 8th Dist. Cuyahoga No. 100283, 2014-Ohio-3321, ¶ 10.

**{¶ 29}** Revere argues that the trial court should have considered his mental health issues and that his mother said he snapped at the time of the incident in rendering a sentence. As a result, Revere posits that a three-year term is sufficient to "accomplish the purposes and principles of sentencing, and to satisfy the seriousness and recidivism factors." Appellant's brief, p. 13. Revere also offers that consecutive sentences are not supported by the record.

**{¶ 30}** The trial court gave due consideration to Revere's mental health issues and history. At the time Revere entered his guilty plea, the trial court referred him to the court psychiatric clinic pursuant to R.C. 2947.06(B) for examination and recommendations regarding disposition.

**{¶ 31}** Defense counsel spoke at length at the sentencing to request consideration of Revere's history of abuse as a child, mental health issues and substance abuse, and the fact that Revere had been incarcerated for over a year to receive mental health attention until he was declared competent to move forward. Counsel also asked that the court consider the mother's plea for her son to receive treatment.

> [W]e are asking the Court to consider all the multiple factors prior to imposing a sentence in this case, the fact that he has taken responsibility for his actions, the fact that he has shown genuine remorse for his conduct, the history of abuse and trauma to his head, the history of abusing drugs all caused Mr. Revere, your Honor, to spiral out of control.

(Tr. 115.) Revere also addressed the trial court at length about the challenges he has faced throughout his life.

{¶ 32} The trial court stated its findings:

I have had an opportunity to hear from you, Mr. Revere, hear from your lawyer, from the State, hear from the victim. I have had an opportunity to review the presentence investigation report and the mitigation of penalty report as well.

I have also outlined the Defendant's history, and the Defendant does have, prior to this offense, a crime of violence in his past, and it appears more than one because he has a misdemeanor assault. So my job is not just to punish you, but it's to protect the community as well. This is a crime that is against your own mother, and while the victim disputes some of the facts of what occurred, it appears to me what is not disputed, and based on the questions that I asked, is that you did strangle her or choke her or put her in a choke hold to the point where she lost consciousness. When she woke from being unconscious, you had her tied up in chains. What I don't believe is disputed is that you were extremely violent, and I believe that she was in fear for her life. Now, maybe today she says she wasn't in fear and that she feels you snapped and you need help to address your violence and the violence that you displayed to her, but this is your own mother that you displayed this violence. I find it's extremely violent to the point where she had to jump out of a window to get away from you?

That's horrible.

(Tr. 140-142.)

{¶ 33} We find that the record reveals that the trial court considered all required factors of the law and determined that prison is consistent with the purpose of R.C. 2929.11. Journal entry No. 107923147 (Mar. 20, 2019). The sentence is within the statutory range. "[A] maximum sentence is not contrary to law when it is within the statutory range and the trial court considered the statutory principles and purposes of sentencing as well as the statutory seriousness and recidivism factors."

*State v. Martin*, 2d Dist. Clark No. 2014-CA-69, 2015-Ohio-697, ¶ 8, citing *State v. Walker*, 2d Dist. Montgomery No. 25741, 2014-Ohio-1287, ¶ 17-19.

{¶ 34} The trial court further ruled:

> I find that a consecutive prison sentence is necessary to protect the community and to punish you. It's not disproportionate. I find that the harm is so great or unusual that a single term does not adequately reflect the seriousness of your conduct, and your criminal history shows that a consecutive sentence is necessary to protect the public. And I also find that your multiple offenses were committed as part of one or more courses of conduct, and the harm caused by two or more of the multiple offenses so committed was so great or unusual that no single prison term for any of the offenses committed, as part of any of the forces of conduct, adequately reflects the seriousness of your conduct. That is based on the facts that I placed into the record as to what occurred on that date, your mother being the victim of this crime and you displaying such violence in choking her, strangling her, however you want to describe it with that word, to the point she lost consciousness. She doesn't know how long she was unconscious. Then you tied her up with chains. Whether you released her or she escaped from the chains, I am not sure, but to get away from you she had to jump from a second floor window.
>
> So for all those reasons, I find that the consecutive sentence is necessary.

(Tr. 143-144.)

{¶ 35} The journal entry mirrors the findings:

> The court imposes prison terms consecutively finding that consecutive service is necessary to protect the public from future crime or to punish defendant; that the consecutive sentences are not disproportionate to the seriousness of defendant's conduct and to the danger Defendant poses to the public; and that, at least two of the multiple offenses were committed in this case as part of one or more courses of conduct, and the harm caused by said multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of any of the courses of conduct adequately reflects the seriousness of Defendant's conduct, or defendant's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the

public from future crime by Defendant.  Defendant to receive jail time credit for 404 day(s), to date.

Journal entry No. 107923147 (Mar. 20, 2019).

{¶ 36} The second assigned error is overruled.

**C.  Guilty Plea**

{¶ 37} Revere's final error is that his guilty plea was not knowingly, intelligently, and voluntarily made.  We disagree.

{¶ 38} A defendant has a constitutional right to understand the nature of his plea and the rights that he will be waiving.

> In considering whether a plea was entered knowingly, intelligently and voluntarily, "an appellate court examines the totality of the circumstances through a de novo review of the record." *State v. Spock*, 8th Dist. Cuyahoga No. 99950, 2014-Ohio-606, ¶ 7; *see also State v. Jackson*, 8th Dist. Cuyahoga No. 99985, 2014-Ohio-706, ¶ 6.  Where a defendant enters a guilty plea without asserting innocence, it is presumed that the defendant understands that he or she has admitted his or her guilt.  *State v. Griggs*, 103 Ohio St.3d 85, 2004-Ohio-4415, 814 N.E.2d 51, ¶ 19; *State v. Reeves*, 8th Dist. Cuyahoga No. 100560, 2014-Ohio-3497, ¶ 12.

*State v. Alvelo*, 2017-Ohio-742, 85 N.E.3d 1032, ¶ 21 (8th Dist.).

{¶ 39} Crim.R. 11(C)(2) governs the acceptance of guilty pleas in felony cases.  It provides:

> (2) In felony cases the court may refuse to accept a plea of guilty or a plea of no contest, and shall not accept a plea of guilty or no contest without first addressing the defendant personally and doing all of the following:

> (a) Determining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

(b) Informing the defendant of and determining that the defendant understands the effect of the plea of guilty or no contest, and that the court, upon acceptance of the plea, may proceed with judgment and sentence.

(c) Informing the defendant and determining that the defendant understands that by the plea the defendant is waiving the rights to jury trial, to confront witnesses against him or her, to have compulsory process for obtaining witnesses in the defendant's favor, and to require the state to prove the defendant's guilt beyond a reasonable doubt at a trial at which the defendant cannot be compelled to testify against himself or herself.

Crim.R. 11(C)(2).

{¶ 40} Revere concedes that the trial court complied with Crim.R. 11(C)(2) but argues that Revere's response to the citizenship inquiry indicated that he did not understand the proceedings or was unwilling to cooperate, rendering his plea involuntary, unknowing, and unintelligent.

{¶ 41} Revere responded appropriately to the other components of the Crim.R. 11(C)(2) inquiry but entered into an extended exchange with the trial court regarding his citizenship. Revere initially stated that he is a "Moorish American. Which means I am not under all your rules." (Tr. 93.) "I'm a descendant of North Africa." (Tr. 94.) Revere admitted that he was born in the United States as a dual citizen "Moorish American." (Tr. 95.)

{¶ 42} Revere has been pronounced competent to stand trial and was diagnosed as malingering. We find that Revere's responses are actually lucid, logical, and clearly stated. We do not find that Revere's Moorish American citizenship claim renders his plea invalid.

{¶ 43} The third assigned error is overruled.

## IV. Conclusion

{¶ 44} The trial court's judgment is affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, PRESIDING JUDGE

KATHLEEN ANN KEOUGH, J., and
MICHELLE J. SHEEHAN, J., CONCUR