[Cite as *State v. Craig*, **2020-Ohio-3103.**]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-160816 |
| | | TRIAL NO. B-1504585 |
| Plaintiff-Appellee, | : | |
| vs. | : | *O P I N I O N.* |
| STEVEN ALLEN CRAIG, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From:  Hamilton County Court of Common Pleas

Judgment Appealed From Is:    Affirmed in Part, Reversed in Part, Sentences Vacated, and Cause Remanded

Date of Judgment Entry on Appeal: May 27, 2020

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Judith Anton Lapp*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender*,* and *David Hoffmann*, Assistant Public Defender, for Defendant-Appellant.

**MYERS, Judge.**

{¶1}   This case returns to us from the Supreme Court of Ohio after a unique set of circumstances.  Even though his original conviction was not final and appealable, defendant-appellant Steven Allen Craig has been found incompetent to stand trial since this case was last before us, rendering his conviction final.  We now consider the merits of his appeal.

*Procedural History*

{¶2}   Craig was indicted on one count of rape and two counts of felonious assault, all involving the same victim.  A jury found Craig guilty of the felonious-assault counts, but it was unable to reach a verdict on the rape count.  The trial court imposed concurrent seven-year prison sentences on the felonious-assault counts.  The court declared a mistrial on the rape count, and that count remained pending.

{¶3}   Craig attempted to appeal his felonious-assault convictions to this court, but we dismissed his appeal for lack jurisdiction, holding that the trial court's failure to dispose of the rape count on which the jury failed to reach a verdict prevented the judgment of conviction on the other counts from being final and appealable.  *State v. Craig,* 2017-Ohio-8962, 101 N.E.3d 650, ¶ 12 (1st Dist).  Craig appealed our decision to the Supreme Court of Ohio.  While that appeal was pending, the trial court found Craig incompetent to stand trial on the remaining count.

{¶4}   The Supreme Court held that a conviction on one count of a multicount indictment is not a final, appealable order when other counts remain pending after a mistrial.  *State v. Craig*, Slip Opinion No. 2020-Ohio-455, ¶ 21.  However, where the state is prevented from retrying the defendant on the remaining counts due to a finding that the defendant is incompetent to stand trial, the court held that the incompetency finding operates to sever the charges, and the defendant may appeal his conviction and sentence.  *Id.* at ¶ 26.  The court held that Craig's

convictions became final when he was adjudged incompetent, and it reversed our judgment and remanded the case for us to consider the merits of the appeal. *Id.* at ¶ 27.

*Craig's Assignments of Error*

{¶5} In five assignments of error, Craig argues that: (1) the trial court erred by admitting evidence of other acts; (2) the trial court erred in admitting hearsay testimony; (3) his convictions were against the manifest weight and sufficiency of the evidence; (4) the trial court erred by failing to merge the offenses for sentencing, and (5) the trial court erred by failing to award him jail-time credit. Finding merit in two of his assignments of error, we remand for the proper calculation of jail-time credit and for a new sentencing hearing at which the state must elect which allied offense it will pursue against Craig. We affirm the trial court's judgment in all other respects.

*Background Facts*

{¶6} J.G. met Craig while both were homeless and living in downtown Cincinnati. They had known each other for a few years when they began dating in mid-February 2015. In the first few weeks of their relationship, Craig treated J.G. well, but then things began to change as Craig became obsessed with her. He would not allow J.G. to go anywhere by herself, and he did not like her talking to other people. He would wait outside the door while she used the bathroom. If she tried to get away from him, he would follow her.

{¶7} Craig's possessiveness of J.G. soon turned violent. On March 8, 2015, Craig threw a cinder block on J.G.'s ankle, and the following day, March 9, he put a cigarette out on her eyelid and ripped her bra off of her. Later, Craig told her that he did not remember hurting her with a cigarette. He apologized and told her that they should end their relationship and that she should move on.

{¶8} J.G. began dating Derrick Shores.[1] When J.G. was with Shores, Craig would go to the places she frequented to leave messages for her. He would write messages, either on concrete walls or on cups he left, that said, "[J.G.], Steven was here." Craig would also turn beer bottles upside down to let J.G. know that he was around, which caused her to feel afraid and uncomfortable. Then Craig threatened to kill J.G. and Shores. Shores broke up with J.G., believing that if he were not with her, Craig would leave her alone.

{¶9} J.G. soon returned to Craig. At night, Craig would collect scrap metal and wire, which he would sell the next morning for money to buy alcohol. He and J.G. spent their days drinking together, often sharing a liter of vodka. The pair lived in an area under a bridge.

{¶10} After several months, J.G. wanted to leave Craig and made repeated attempts to escape from him. To prevent J.G. from leaving, Craig would take her clothes and shoes and hide them from her, forcing her to remain naked in their makeshift home under the bridge. While the jury did not reach a verdict on the charge of rape, J.G. testified as to the events of July 25. After she had fallen asleep, Craig flipped her onto her stomach, held her down, and began shoving his fingers repeatedly into her rectum. J.G. awoke and screamed in pain because Craig was "slamming" his fingers into her. During the assault, Craig called J.G. by his mother's name and called her a stupid bitch. Then Craig stopped, apologized to J.G., and gave her clothes back to her.

{¶11} Over the next few days, whenever J.G. would try to leave Craig, Craig would slam her down, shove his fingers into her eyes, and punch her in the head and chest. Craig would put his hands around her neck and shove his fingers down her throat so that she could not breathe or scream. Craig continually threatened that he

---

[1] Derrick Shores is also referred to in trial testimony as Derrick Short.

4

would kill her and put her in a nearby sewer hole, and said that he would frame Shores for killing her. The violence continued through July 28, when a friend saw J.G's battered face and called the police.

{¶12} The police spoke with J.G. just after midnight on July 29, but Craig had run away before they arrived. J.G. worried that the police would not find him before he killed her. On July 30, J.G. was interviewed by Detective Kelly Best, who took photographs of J.G.'s injuries.

{¶13} Then J.G. returned to Craig because she loved him and believed that the abuse would stop. However, the abuse continued, so J.G. made plans to escape from Craig and she hid some of her clothes in a friend's backpack. On August 15, when she thought Craig was asleep, she got up to get the backpack and leave. But Craig threw her down, grabbed a hammer, and struck her in the forehead with it. When J.G. tried to stand up, Craig repeatedly slammed her down on the ground. He pushed his fingers into her eyes so hard that she had blood coming out of one eye. He also bit her cheek. Craig head-butted her several times until she lost consciousness. When J.G. regained consciousness, she saw that Craig was setting the backpack on fire, so she tried to throw water on it.

{¶14} A little while later, to give herself a chance to escape, J.G. tricked Craig into leaving their encampment with her to get beer. Craig told her that she looked "like a train wreck" so she should tell people that she had been in a car accident. Craig allowed J.G. to cross a street to get beer from a gas station. As J.G. exited from the gas station with the beer, a stranger noticed her bruised face and asked if she needed to go somewhere. J.G. pointed at Craig and said that she was trying to get away from him. The stranger drove her to her grandmother's home.

{¶15} J.G.'s grandmother took photos of J.G.'s injuries. J.G. had black eyes and a knot on her forehead from the hammer strike. She did not seek medical treatment.

**{¶16}** The following day, J.G. and her grandmother left messages for Detective Best about the latest assault. J.G. met with the detective several days later, on August 20. At that meeting, the detective heard for the first time that Craig had struck J.G. in the head with a hammer during the August 15 assault. More photographs were taken of J.G.'s injuries.

**{¶17}** On August 19, the day before Detective Best met with J.G. about the August 15 assault, the detective interviewed Craig. Craig told the detective that he was in a love triangle with J.G. and Shores. He said that he and J.G. had a fight a few days before the end of July. When asked if he had hurt J.G., Craig admitted that he had pinned her down, had caused bruising on her shoulder and chest, and had stuck his finger in her eye, causing it to turn black. The detective did not yet know that Craig had used a hammer in the attack on August 15, so she did not ask him if he had struck J.G. with a hammer. Craig said that he drank all the time and that he often blacked out when he was drunk. He said that in March, he had blacked out and put a cigarette out on J.G.'s eyelid. He said that at first, he did not believe J.G. when she told him he had hurt her, but then he believed her after she showed him her injured eye. Craig described himself as being "psychotically in love" with J.G.

*Admission of Other-Acts Testimony*

**{¶18}** In his first assignment of error, Craig argues that the trial court erred by admitting evidence of other bad acts in violation of Evid.R. 404(B) and R.C. 2945.59. He contends that the trial court should not have allowed testimony about his assaults on J.G. on March 8 and 9, and on July 28. The state responds that the evidence of Craig's acts of dominion and control over J.G. were admissible to prove his motive and intent.

**{¶19}** Generally, evidence of other acts is not admissible to prove a person's character and that she or he acted in conformity therewith, or to prove that the person has the propensity to act in a certain manner. Evid.R. 404(B); *State v. Crotts*,

6

104 Ohio St.3d 432, 2004-Ohio-6550, 820 N.E.2d 302, ¶ 18. However, under Evid.R. 404(B), other-acts evidence may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." Similarly, R.C. 2945.59 allows other-acts evidence tending to show a defendant's "motive or intent, the absence of mistake or accident on his part, or the defendant's scheme, plan, or system in doing the act in question." Other-acts evidence may be admitted if it is relevant and offered for a legitimate purpose, such as those set forth in Evid.R. 404(B) and R.C. 2945.59, and if the danger of unfair prejudice does not substantially outweigh its probative value, as set forth in Evid.R. 403. *State v. Kirkland*, 140 Ohio St.3d 73, 2014-Ohio-1966, 15 N.E.3d 818, ¶ 68, citing *State v. Williams*, 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 20.

{¶20} " 'Evid.R. 403 speaks in terms of unfair prejudice. Logically, all evidence presented by a prosecutor is prejudicial, but not all evidence unfairly prejudices a defendant. It is only the latter that Evid.R. 403 prohibits.' " *State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, 819 N.E.2d 215, ¶ 107, quoting *State v. Wright*, 48 Ohio St.3d 5, 8, 548 N.E.2d 923 (1990). Unfairly prejudicial evidence is evidence that invites a jury to decide a case on an improper basis. *See Crotts* at ¶ 24; *State v. Lang*, 129 Ohio St.3d 512, 2011-Ohio-4215, 954 N.E.2d 596, ¶ 89.

{¶21} The trial court has broad discretion in the admission of other-acts evidence. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528, ¶ 22. We will not disturb a trial court's admission of other-acts evidence unless the trial court clearly abused its discretion and the defendant suffered material prejudice as a result. *See Kirkland* at ¶ 67.

{¶22} Evidence of a defendant's prior acts of domestic violence against the same victim is admissible to show motive, intent, and absence of mistake or accident. *State v. Walker*, 1st Dist. Hamilton No. C-190193, 2020-Ohio-1581, ¶ 48, citing *State*

*v. Nields*, 93 Ohio St.3d 6, 22, 752 N.E.2d 859 (2001). Thus, evidence of prior abuse demonstrating the violent nature of the relationship between the defendant and the victim, the victim's fear of the defendant, and the control that the defendant exercised over the victim may be admissible to prove the defendant's motive and intent in harming the victim. *Id.* at ¶ 49; *see State v. Evans*, 1st Dist. Hamilton No. C-170034, 2018-Ohio-2534, ¶ 24; *State v. Lucas*, 8th Dist. Cuyahoga No. 108436, 2020-Ohio-1602, ¶ 88-89.

{¶23} In this case, evidence of Craig's prior domestic violence against J.G. in the months preceding the rape and felonious-assault offenses demonstrated the turbulent nature of their relationship and the control that Craig asserted over J.G. Because the evidence was probative of Craig's motive to stop J.G. from leaving, his motive to control her, and his intent in harming her, it was admissible under Evid.R. 404(B) and R.C. 2945.59. Although the evidence was undoubtedly prejudicial, it was not unfairly prejudicial. The state introduced the other-acts evidence for a proper purpose and did not invite the jury to draw any impermissible inferences about Craig's character from it. Therefore, we hold that the trial court did not abuse its discretion by admitting the other-acts evidence. We overrule the first assignment of error.

*Admission of Hearsay Testimony*

{¶24} In his second assignment of error, Craig argues that the trial court erred by admitting hearsay testimony. He asserts that J.G.'s out-of-court statements about the other-acts incidents were improperly admitted through the testimony of two police officers. We agree.

{¶25} The statements of J.G. were offered for their truth and were not admissible under any exception to the hearsay rule. *See* Evid.R. 802 and 803. However, even though the trial court erred by admitting these statements, the error was harmless because J.G. testified to the same information and was subject to

cross-examination. *See State v. Beasley*, 153 Ohio St.3d 497, 2018-Ohio-493, 108 N.E.3d 1028, ¶ 176, citing *State v. Spirko*, 59 Ohio St.3d 1, 33, 570 N.E.2d 229 (1991). Therefore, we overrule the second assignment of error.

*Weight and Sufficiency of the Evidence*

{¶26} In his third assignment of error, Craig challenges the weight and sufficiency of the evidence supporting his convictions. In a challenge to the sufficiency of the evidence, the question is whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus. In reviewing a challenge to the weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We must review the entire record, weigh the evidence, consider the credibility of the witnesses, and determine whether the trier of fact clearly lost its way and created a manifest miscarriage of justice. *Id.*

{¶27} In this case, the jury found Craig guilty of felonious assault under two separate provisions of the Revised Code. As to the first, to find Craig guilty of felonious assault under R.C. 2903.11(A)(1), the jury had to find that he caused serious physical harm to J.G. R.C. 2901.01(A)(5) defines "serious physical harm" as:

> (a) Any mental illness or condition of such gravity as would normally require hospitalization or prolonged psychiatric treatment;
>
> (b) Any physical harm that carries a substantial risk of death;
>
> (c) Any physical harm that involves some permanent incapacity, whether partial or total, or that involves some temporary, substantial incapacity;
>
> (d) Any physical harm that involves some permanent disfigurement or that involves some temporary, serious disfigurement;

(e) Any physical harm that involves acute pain of such duration as to result in substantial suffering or that involves any degree of prolonged or intractable pain.

{¶28} The degree of harm required to establish "serious" physical harm "is not an exact science, particularly when the definition includes such terms as 'substantial,' 'temporary,' 'acute,' and 'prolonged.' " *State v. Irwin*, 7th Dist. Mahoning No. 06 MA 20, 2007-Ohio-4996, ¶ 37. The extent or degree of a victim's injuries is "normally a matter of the weight, rather than the sufficiency of the evidence." *Id.*, citing *State v. Salemi*, 8th Dist. Cuyahoga No. 81091, 2002-Ohio-7064, ¶ 34.

{¶29} Here, the jury could reasonably have found that J.G. suffered serious physical harm because Craig repeatedly head-butted her until she was "knocked out." Temporary loss of consciousness constitutes a temporary substantial incapacity, and, therefore, serious physical harm. *State v. Revere*, 8th Dist. Cuyahoga No. 108386, 2020-Ohio-572, ¶ 22; *State v. Wimpey*, 6th Dist. Lucas No. L-18-1262, 2019-Ohio-4823, ¶ 23; *State v. Holley*, 2d Dist. Montgomery No. 27115, 2017-Ohio-7430, ¶ 2; *State v. Sales*, 9th Dist. Summit No. 25036, 2011-Ohio-2505, ¶ 19. In addition, J.G. suffered an injury to her forehead that resulted in a knot that lasted for months, which the jury could have found to constitute temporary serious disfigurement. *See, e.g.*, *State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 24 (1st Dist.) (extensive bruising and swelling on the victim's head and body, a gash on the victim's scalp, and a large swelling and gash under the victim's deeply blackened eye constituted temporary serious disfigurement); *State v. Adams*, 2016-Ohio-7772, 84 N.E.3d 155, ¶ 38 (4th Dist.) (facial bruising and lip injury constituted temporary serious disfigurement resulting in substantial suffering); *State v. Payne*, 8th Dist. Cuyahoga No. 76539, 2000 WL 1010969 (July 20, 2000) (bloody, cut, and swollen eye constituted temporary serious disfigurement). We hold that the state presented

10

sufficient evidence that J.G. suffered serious physical harm as a result of Craig's assault.

{¶30} Craig asserts that the state failed to prove that J.G. sustained serious physical harm because J.G. did not seek medical attention and because no medical records were introduced into evidence in support of her claimed injuries. However, the fact that a victim does not seek medical treatment after an assault does not preclude a finding that the victim suffered serious physical harm. *See State v. Nipper*, 12th Dist. Butler No. CA2002-06-135, 2003-Ohio-4449, ¶ 13-14; *Holley* at ¶ 59; *State v. Booker*, 2d Dist. Montgomery No. 22990, 2009-Ohio-1039, ¶ 51.

{¶31} As to the other charge, to find Craig guilty of felonious assault under R.C. 2903.11(A)(2), the jury had to find that he caused or attempted to cause physical harm to J.G. by means of a deadly weapon. "Physical harm" means "any injury, illness, or other physiological impairment, regardless of its gravity or duration." R.C. 2901.01(A)(3). "Deadly weapon" is defined as "any instrument, device, or thing capable of inflicting death, and designed or specially adapted for use as a weapon, or possessed, carried, or used as a weapon." R.C. 2923.11(A). The state presented evidence that Craig struck J.G. in the head with a hammer, which is a deadly weapon when it is used as a bludgeon. *See State v. Barb*, 8th Dist. Cuyahoga No. 90768, 2008-Ohio-5877, ¶ 12.

{¶32} Craig does not dispute that a hammer can be used as a deadly weapon. He argues that the state failed to prove that a deadly weapon was used because no hammer was admitted into evidence and the only evidence that he used a hammer was J.G.'s testimony. However, the jury was entitled to believe J.G.'s testimony that a hammer was used as a deadly weapon. *See State v. Daniels*, 9th Dist. Lorain No. 03CA008261, 2004-Ohio-828, ¶ 17. Moreover, the photographic evidence adduced at trial corroborated J.G.'s testimony about the hammer. Therefore, we hold that the

state presented sufficient evidence that Craig committed felonious assault by means of a deadly weapon under R.C. 2903.11(A)(2).

{¶33} Turning to the weight of the evidence, Craig asserts that J.G.'s testimony that he attacked her to stop her from leaving him was not credible. Craig points out that J.G. had opportunities to leave whenever he left their campsite to collect or to sell scrap metal. In addition, Craig points out that when J.G. reported to police that she was assaulted on July 28, she did not tell them about the rape that occurred a few days earlier. Craig also notes that J.G. did not immediately inform Detective Best that a hammer was used in the August 15 assault. Finally, Craig asserts that J.G.'s credibility "was fatally compromised by her conviction for attempted forgery."

{¶34} Defense counsel raised these issues during closing argument, and the jury was free to believe or to disbelieve J.G.'s testimony as to why she felt she could not leave Craig and her explanations for her delays in reporting the rape and the use of a hammer to police. Based on our review of the record, we cannot conclude that the jury lost its way in finding Craig guilty of both counts of felonious assault. This is not the "exceptional case in which the evidence weighs heavily against the conviction." *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. Therefore, we hold that Craig's convictions were not against the manifest weight of the evidence.

{¶35} Craig's convictions were based upon sufficient evidence and were not against the manifest weight of the evidence. Therefore, we overrule the third assignment of error.

*Allied Offenses*

{¶36} In his fourth assignment of error, Craig argues that the trial court erred by sentencing him to concurrent seven-year prison terms. As the state conceded at the sentencing hearing and in its brief to this court, the felonious-assault convictions were based upon the same conduct and should merge for sentencing.

12

The trial court's imposition of concurrent sentences for offenses that should have been merged constitutes plain error. *See State v. Murph*, 1st Dist. Hamilton No. C-150263, 2015-Ohio-5076, ¶ 8. Therefore, we sustain the fourth assignment of error.

*Jail-Time Credit*

{¶37} In his fifth assignment of error, Craig argues that the trial court erred by failing to award him jail-time credit. He contends that he should have received 419 days of jail-time credit. The state concedes that Craig was entitled to jail-time credit, but states that it cannot determine the appropriate amount of time based on the record. The trial court's failure to calculate and include in its sentencing entry the appropriate amount of jail-time credit constitutes plain error. *See State v. Washington*, 1st Dist. Hamilton No. C-140315, 2015-Ohio-1815, ¶ 9. Therefore, we sustain the fifth assignment of error.

*Conclusion*

{¶38} For the reasons discussed above, we vacate the sentences and remand this case for a new sentencing hearing at which the state must elect which allied offense it will pursue. *See State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, 922 N.E.2d 182, paragraph two of the syllabus. In addition, the trial court must make a factual determination of the number of days of jail-time credit to which Craig is entitled and include it in the sentencing entry. In all other respects, the trial court's judgment is affirmed.

Judgment accordingly.

**MOCK, P.J.,** and **ZAYAS, J.,** concur.

Please note:

The court has recorded its own entry this date.

13