[Cite as *In re S.D.*, 2021-Ohio-2747.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| IN RE: S.D. | : | APPEAL NOS. C-200304 |
| | | C-200305 |
| | : | C-200306 |
| | | C-200307 |
| | : | TRIAL NOS. 19-5152X |
| | | 19-5153X |
| | | 19-5154X |
| | : | 19-5155X |
| | : | |
| | : | *O P I N I O N.* |

Appeals From: Hamilton County Juvenile Court

Judgments Appealed From Are: Affirmed

Date of Judgment Entry on Appeal: August 11, 2021

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller,* Hamilton County Public Defender, *Jessica Moss,* Assistant Public Defender, and *Robert Jones,* Assistant Public Defender, for Defendant-Appellant.

**ZAYAS, Presiding Judge.**

{¶1} S.D. appeals the judgments of the Hamilton County Juvenile Court overruling his motion to dismiss the rape charge and imposing serious youthful offender dispositional sentences for rape and three counts of importuning. For the reasons discussed below, we affirm the judgments of the trial court.

Factual Background

{¶2} On October 15, 2019, complaints were filed against S.D. alleging rape, a felony of the first degree if committed by an adult, and three counts of importuning, felonies of the third degree if committed by an adult. On October 25, 2019, the state filed motions for relinquishments on each case. After the parties stipulated to probable cause, the juvenile court conducted an amenability hearing and retained jurisdiction, finding S.D. was amenable to treatment within the juvenile system.

{¶3} On March 12, 2020, S.D. filed a motion to dismiss the charge, seeking to reduce or dismiss the rape charge after S.D. was indicted for rape and three counts of importuning, and each count alleged S.D. was subject to a serious youthful offender ("SYO") designation. The motion focused on the mitigating factors with respect to S.D. The juvenile court overruled the motion.

{¶4} On June 17, 2020, S.D. filed a motion to dismiss under Juv.R. 29. S.D. asked the court to dismiss the complaint, or to dismiss or reduce the rape charge, and to consider postponing the disposition under Juv.R. 29(F)(2). At the hearing on the motion, S.D. argued that it would be in his best interest to dismiss or reduce the rape charge because he could be successfully rehabilitated in the juvenile system after a dismissal or reduction due to the other three felonies. He further argued that

the reduction or dismissal would allow for an eventual expungement and protect him from a permanent label. The state argued that dismissal or reduction was not in the best interest of the community because there was insufficient time to ensure successful completion of therapy, the public interest and safety would not be protected, and S.D. would not be held accountable.

{¶5} The court took the matter under advisement and stated: "I'm acutely aware of the status of the young man, the history of the young man, what happened here. I'm acutely aware of community safety as well as obviously what's happened to him and these allegations." The juvenile court overruled the motion on July 16, 2020, at the initial disposition hearing.

{¶6} S.D. also filed a motion in opposition to an SYO designation, arguing that the irrebuttable presumption of a mandatory term violates due process as applied to juveniles because it treats all juveniles as culpable as adults, and that the mandatory sentence constitutes cruel and unusual punishment because it prevents the court from considering youth as a factor and is the equivalent of life without parole. At the final disposition hearing, S.D. also argued that applying the SYO sentence to him was unconstitutional. The juvenile court committed S.D. to the Department of Youth Services for an aggregate term of a minimum of 36 months, with the maximum not to exceed his 21st birthday. The court also imposed a stayed adult sentence of 15 years to life incarceration in the Department of Corrections as part of the SYO disposition.

{¶7} S.D. now appeals, challenging the juvenile court's decision overruling his motion to dismiss the rape charge and the imposition and constitutionality of the serious youthful offender designations.

Law and Analysis

{¶8} First, S.D. argues that the juvenile court abused its discretion when it denied his motion to dismiss the rape charge because the record established that the court was able to achieve the same outcome as to treatment, consequences, disposition, and registration requirements without the adjudication for rape.

{¶9} A juvenile court has broad discretion to dismiss a case after adjudication if dismissal is in the "best interest of the child and the community." Juv.R. 29(F)(2)(d). Whether a delinquency proceeding should be dismissed is within the sound discretion of the trial judge. *In re N.K.*, 8th Dist. Cuyahoga No. 82332, 2003-Ohio-7059, ¶ 23. We review the court's determination for an abuse of discretion. *See In re Smith*, 80 Ohio App.3d 502, 504, 609 N.E.2d 1281 (1st Dist.1992). An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable*." See Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

{¶10} Essentially, S.D. argues that the juvenile court should have dismissed or reduced the rape charge because S.D. suffered horrific abuse as a child and never received appropriate treatment and the record shows the court could achieve the same outcome if the charge was reduced or dismissed. Although S.D.'s abuse and lack of treatment was well documented, the record does not support S.D.'s assertion that the court could achieve the same outcome under these circumstances.

{¶11} The record contains evidence that S.D., who was 18 at the time of disposition, was 17 years old when the offenses occurred, the offenses represented a pattern of conduct involving four young children ranging in age from five to 11 years old, the juvenile resources may not be adequate to successfully rehabilitate S.D. or

hold him accountable, and the victims had suffered tremendously and had not been restored. Based on this record, we cannot conclude that the trial court abused its discretion in denying the motion to dismiss, and overrule the first assignment of error.

{¶12} In his second assignment of error, S.D. contends that the juvenile court abused its discretion when it imposed a serious youthful offender designation on him. S.D. correctly states that an appellate court reviews the imposition of an SYO sentence under R.C. 2152.13(D)(2)(a)(i) for an abuse of discretion. *See In re Wilson*, 11th Dist. Lake No. 2003-L-160, 2005-Ohio-3262, ¶ 8.

{¶13} Under R.C. 2152.11(D)(2), the juvenile court had the discretion to impose an adult sentence on S.D. In order to impose an adult sentence, R.C. 2152.13(D)(2)(a)(i) provides:

> If the juvenile court on the record makes a finding that, given the
> nature and circumstances of the violation and the history of the child,
> the length of time, level of security, and types of programming and
> resources available in the juvenile system alone are not adequate to
> provide the juvenile court with a reasonable expectation that the
> purposes set forth in section 2152.01 of the Revised Code will be met,
> the juvenile court may impose upon the child a sentence available for
> the violation, as if the child were an adult, under Chapter 2929. of the
> Revised Code, except that the juvenile court shall not impose on the
> child a sentence of death or life imprisonment without parole.

{¶14} The purposes of R.C. 2152.01 are "to provide for the care, protection, and mental and physical development of children subject to this chapter, protect the

public interest and safety, hold the offender accountable for the offender's actions, restore the victim, and rehabilitate the offender." R.C. 2152.01(A).

{¶15} S.D. acknowledges that the juvenile court made the requisite findings, and instead argues that the court did not provide its reasons for the findings and that the record did not support the court's findings. S.D. claims that the offenses were not a pattern because they occurred over a short time period and further argues that the record supported a finding that the juvenile system was adequate to meet the purposes of R.C. 2152.01 due to S.D.'s prior abuse, lack of treatment, willingness to participate in treatment, and the testimony of Chelsey Blazer, Linda Lakamp, Nolita Niederhelm, and Sara Stevens that the juvenile system was sufficient to rehabilitate S.D.

{¶16} However, those four witnesses testified in support of Abraxas over a DYS placement. Abraxas is a residential facility that provides sex offender treatment to juveniles. Blazer, a high school intervention specialist, testified that the pending prison sentence would help motivate S.D. to successfully complete the juvenile treatment at Abraxas. Lakamp, a speech therapist, expressed her hope that S.D. would remain in the juvenile system. Family friend Niederhelm expressed her support for the Abraxas program, and Stevens, who works at Abraxas, explained to the court that the program was appropriate for S.D. None of these witnesses testified that Abraxas was sufficient to rehabilitate S.D.

{¶17} None of the sex offender experts who testified about S.D.'s amenability to treatment definitively concluded that S.D. would be successfully treated in the juvenile system within the relevant time frame. Dr. Bassman, who had not met with S.D., discussed the importance of treatment and aftercare and testified that more

treatment is required when the offense is not a one-time offense. He did not recommend a time frame for treatment. Dr. Taylor estimated that S.D. probably required up to three years of treatment.

{¶18} Based on this record, the juvenile court did not abuse its discretion in imposing a serious youthful offender disposition. We overrule the second assignment of error.

{¶19} S.D. asserts, in his third assignment of error, that the mandatory sentencing scheme in R.C. 2971.03 is unconstitutional because it does not permit the trial court to make an individualized determination about S.D.'s sentence or consider his youth as a mitigating factor in violation of his right to be free from cruel and unusual punishment and his right to due process of the law. The crux of this argument is that the adult portion of the SYO sentence does not allow the court to consider youth as a mitigating factor, contrary to the Ohio Supreme Court's recent decision in *State v. Patrick*, Slip Opinion No. 2020-Ohio-6803, and therefore, violates due process and the prohibition against cruel and unusual punishment.

{¶20} In *Patrick*, the Ohio Supreme Court determined that a trial court must consider a juvenile's youth as a mitigating factor when imposing a life sentence on a juvenile who was convicted as an adult. *Id.* at ¶ 27. The Ohio Supreme Court concluded that "age is undoubtedly a relevant factor that should be considered when a trial court sentences an offender who was a juvenile when he or she committed the offense, and therefore, youth is a relevant sentencing consideration under R.C. 2929.12(C) and (E)." *Id.* Accordingly, the court held that "a trial court must separately consider the youth of a juvenile offender as a mitigating factor before

7

imposing a life sentence under R.C. 2929.03, even if that sentence includes eligibility for parole." *Id.* at ¶ 2.

{¶21} However, S.D was not bound over, convicted, and sentenced as an adult. Instead, S.D.'s disposition consisted of a juvenile disposition and a stayed adult sentence. As previously discussed, before imposing an adult sentence, R.C. 2152.13(D)(2)(a) requires that the juvenile court: (1) make findings that, under the circumstances, the juvenile system is not adequate to meet the purposes in R.C. 2152.01; (2) after making those findings, it may impose an adult sentence along with traditional juvenile dispositions; and (3) after exercising its discretion, and imposing a blended sentence, stay the adult portion pending successful completion of the traditional juvenile disposition. *See In re J.G.*, 3d Dist. Logan No. 8-20-59, 2021-Ohio-1624, ¶ 22.

{¶22} In determining whether to impose the discretionary adult sentence on S.D., the juvenile court considered "the nature and circumstances of the violation and the history of the child" and the purposes of R.C. 2152.01, which include providing "for the care, protection, and mental and physical development of children subject to this chapter * * *." R.C. 2152.13(D)(2)(a); R.C. 2152.01(A). S.D. acknowledges that the juvenile court made the requisite findings before imposing the SYO sentence. And a review of the record confirms that the court considered S.D.'s youth prior to imposing the blended sentence.

{¶23} Unlike the adult sentencing statutes considered in *Patrick*, the juvenile statutes require the court to consider the child's youth before imposing an SYO sentence. Juvenile judges must consider youth as a mitigating factor in determining whether to impose an SYO classification and sentence. Thus, the reasoning applied

8

in *Patrick* is inapplicable to this case, and the SYO sentence does not violate S.D.'s constitutional rights because youth is considered in imposing an SYO sentence. *See In re N.S.*, 5th Dist. Coshocton No. 2016 CA 0005, 2017-Ohio-163, ¶ 19-22 (concluding that SYO sentencing does not violate a juvenile's due process rights or the prohibition against cruel and unusual punishments because in "determining whether a SYO finding is appropriate, the juvenile court must consider the circumstances of the violation and the child's history with specific aspects of the juvenile system, i.e., the length of time the child can be in the juvenile system, the level of security available in the juvenile system, and the types of programming and resources available in the juvenile system.").

{¶24} S.D. further argues that his adult sentence violates due process because the adult sentencing statute presumes that he is as morally culpable as an adult. We first note that the juvenile sentencing scheme considers the differences between juveniles and adults by prohibiting an adult sentence of life without parole and requiring that the adult sentence be stayed pending the successful completion of the juvenile disposition. *See* R.C. 2152.13(D)(2)(a). "Ohio's serious youthful offender statutes take into account juvenile-adult differences and make clear that disposition within the juvenile system, if possible, is the preferred form of punishment and rehabilitation." *In re J.B.*, 12th Dist. Butler No. CA2004-09-226, 2005-Ohio-7029, ¶ 139.

{¶25} Finally, citing to our recent decision in *In re D.R.*, 2021-Ohio-1797 ____ N.E.3d ____, (1st Dist.), S.D. contends that his procedural due process rights were violated because R.C. 2971.03 removes a juvenile court's discretion to impose an individualized adult sentence. We disagree. In *In re D.R.*, we held that R.C.

2152.84 violated D.R.'s procedural due-process rights because the juvenile court had no discretion to terminate D.R.'s classification as a Tier I sex offender, rendering the hearing meaningless. *Id.* at ¶ 12-14.

{¶26} Here, the juvenile court made an individualized determination before imposing an SYO sentence. Additionally, before the adult sentence may be invoked, the juvenile must engage in additional serious wrongdoing, and after a hearing, the court must determine the juvenile is unlikely to be rehabilitated during the remaining period of the juvenile jurisdiction. *See* R.C. 2152.14(E)(1). These safeguards satisfy fundamental fairness and due process. *See State v. Aalim*, 150 Ohio St.3d 489, 2017-Ohio-2956, 83 N.E.3d 883, ¶ 27 (holding that a mandatory bindover proceeding which includes a hearing, right to counsel, and judicial findings satisfies a juvenile's due-process rights).

{¶27} Consequently, we overrule S.D.'s third assignment of error.

### *Conclusion*

{¶28} Finding S.D.'s three assignments of error to be without merit, we affirm the judgment of the trial court.

Judgment affirmed.

**CROUSE** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.