[Cite as *In re J.C.*, 2022-Ohio-850.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

IN RE:  J.C.   :   APPEAL NO. C-210318
                   TRIAL NO. 20-1906

               :

               :       *O P I N I O N.*

Appeal From: Hamilton County Juvenile Court

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 18, 2022

*Joseph T. Deters,* Hamilton County Prosecuting Attorney, and *Alex Scott Havlin,* Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Raymond T. Faller*, Hamilton County Public Defender, *Joshua A. Thompson,* Assistant Public Defender*,* and *Catherine Douglas*, Assistant Public Defender, for Defendant-Appellant.

**BERGERON, Presiding Judge.**

{¶1} A ride home from work led to a delinquency adjudication for carrying a concealed weapon when defendant-appellant J.C.'s brother (the driver of the car) turned around and handed her his gun as police pulled the vehicle over. He assured her that, as a juvenile, she would not face any repercussions for possession of the weapon—a prediction that proved inaccurate. On appeal after her adjudication, J.C. protests several of the juvenile court's evidentiary determinations, challenges the weight and sufficiency of the evidence in support of the judgment, and disputes the denial of her Juv.R. 29(F)(2)(d) motion. After a thorough review of the record, we affirm the juvenile court's judgment.

I.

{¶2} J.C. had just finished her shift at a local fast food restaurant when her older brother (A.J.) arrived to pick her up in his car (along with two other passengers). J.C. was both surprised and apprehensive about this because she didn't expect her brother to drive her home and she harbored fear of him based on his past criminal history. But without any other means of getting home, she hopped in the back seat of his car.

{¶3} While in transit, an officer saw a cigar filter fly out of the window of A.J.'s vehicle. The officer decided to run the vehicle's license plate, which revealed that the owner's license was suspended. The officer accordingly activated his lights for a traffic stop, but the vehicle continued to roll for around 100 yards at about five m.p.h. before coming to a complete stop. During this time, the officer saw the driver of the vehicle reaching from his seat over into the passenger's seat as if he were trying to procure something. In fact, A.J. had grabbed his handgun, and fearful of an arrest for possessing the firearm, he turned around and handed it to J.C., admonishing her to keep it because, as a juvenile, she presumably would face no consequences from possessing it.

2

{¶4} After pulling the vehicle over, the officer began questioning the occupants of the vehicle before noticing some marijuana, at which point he ordered everyone out of the vehicle one by one. When the officers asked J.C. to exit the vehicle, she awkwardly inched her way out of vehicle, with her sweatshirt and work apron tightly pressed against her abdomen. After J.C. stepped outside, she dropped her sweatshirt, at which point one of the officers saw the firearm in her waistband. That officer yelled "gun" and took J.C. to the ground. In the midst of that, the gun slid down her pants. J.C. began to cry hysterically, begging the officers to take the firearm from her. The officers recovered the firearm (which was unloaded at the time) and discovered ammunition in J.C.'s purse.

{¶5} J.C. was charged with carrying a concealed weapon. At trial, J.C. testified that A.J. gave her the gun, ordering her to put it on her hip because "nothing's going to happen" to a minor like her. J.C. concedes that A.J. did not explicitly threaten her if she refused to comply, but she nonetheless raised the affirmative defense of duress. In support, she testified that she feared A.J. because of his history of assaulting his girlfriends. Defense counsel sought to introduce A.J.'s criminal history to establish that J.C. was under duress, but the magistrate found that the criminal record was irrelevant, and thus inadmissible. The magistrate eventually adjudicated J.C. delinquent for carrying a concealed weapon, concluding that she failed to establish the defense of duress by a preponderance of evidence. J.C. moved for a dismissal under Juv.R. 29(F)(2)(d), but the magistrate overruled the motion, reasoning that:

> I do think that your brother handed you this gun, but the problem is that you
> kept it and you took it. You could have gotten out of the car. You could have
> said to the officers, 'my brother just handed me this gun, I don't know what to
> do.' You didn't, so you chose to conceal that from the police, which could
> have created a really dangerous situation for you and other people. * * * I

3

understand that it's not fair that your brother put you in the position he did, but you're old enough to know better and to make different choices.

{¶6} J.C. filed objections to the magistrate's decision, but the juvenile court overruled those objections, adopting the magistrate's decision. After a dispositional hearing, the juvenile court placed J.C. on probation. On appeal, J.C. argues that the juvenile court abused its discretion by admitting the state's exhibit 1 (the firearm) and excluding A.J.'s criminal record. J.C. also challenges the weight and sufficiency of the evidence in support of the adjudication and contests the denial of her Juv.R. 29(F)(2)(d) motion.

II.

{¶7} J.C.'s first assignment of error maintains that the juvenile court abused its discretion in connection with two evidentiary rulings—admitting state's exhibit 1 (the firearm) and excluding A.J.'s criminal record.

A.

{¶8} With respect to the handgun, J.C.'s objection boils down to an authentication challenge, disputing whether it was the same handgun recovered at the scene. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims." Evid.R. 901(A). "Authentication is 'a very low threshold, which is less demanding than the preponderance of the evidence.' " *State v. Patterson*, 1st Dist. Hamilton No. C-170329, 2018-Ohio-3348, ¶ 13, quoting *Burns v. May,* 133 Ohio App.3d 351, 355, 728 N.E.2d 19 (12th Dist.1999). "Testimony by a witness with knowledge, 'that a matter is what it is claimed to be,' is an acceptable method of authentication." *Patterson* at ¶ 13, quoting Evid.R. 901(B)(1). We review a challenge to authentication for an abuse of discretion. *State v. Searles*, 1st Dist. Hamilton Nos. C-180339 and C-180340, 2019-Ohio-3109, ¶ 7.

4

{¶9} Both officers testified that state's exhibit 1 was the firearm that they recovered at the scene. J.C. challenges the adequacy of this testimony because neither of them detailed the chain of custody. However, "[a]s a general matter, 'the state [is] not required to prove a perfect, unbroken chain of custody.' " *State v. Gross*, 97 Ohio St.3d 121, 2002-Ohio-5524, 776 N.E.2d 1061, ¶ 57, quoting *State v. Keene*, 81 Ohio St.3d 646, 662, 693 N.E.2d 246 (1998). "Any breaks in the chain of custody go to the weight, rather than the admissibility, of the evidence." *State v. Crossty*, 2017-Ohio-8382, 99 N.E.3d 1048, ¶ 30 (1st Dist.).

{¶10} Since two officers testified, with personal knowledge, that state's exhibit 1 "is what it is claimed to be," the state satisfied the threshold for authenticating exhibit 1. *See* Evid.R. 901(B)(1). J.C.'s challenges go to weight, not admissibility, and we see no abuse of discretion with respect to the admission of this exhibit.

B.

{¶11} We turn now to J.C.'s argument that the juvenile court abused its discretion by excluding A.J.'s criminal record. When defense counsel sought to introduce A.J.'s criminal record, the state objected, citing relevancy grounds. Defense counsel countered that the record would help establish J.C.'s duress defense.

{¶12} " 'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "The admission of evidence is within the sound discretion of the trial court. * * * We will not disturb a trial court's ruling on evidentiary issues * * * absent an abuse of discretion and proof of material prejudice." *State v. Buck*, 2017-Ohio-8242, 100 N.E.3d 118, ¶ 109 (1st Dist.).

{¶13} To establish the affirmative defense of duress, the criminal defendant must prove five elements by a preponderance of the evidence:

(1) a harm due to the pressure of a human force; (2) the harm sought to be avoided was greater than, or at least equal to that sought to be prevented by the law defining the offense charged; (3) the actor reasonably believed at the moment that his act was necessary and was designed to avoid the greater harm; (4) the actor was without fault in bringing about the situation; and (5) the threatened harm was imminent, leaving no alternative by which to avoid the greater harm.

*City of Cincinnati v. White*, 1st Dist. Hamilton No. C-190262, 2020-Ohio-1231, ¶ 17, quoting *State v. Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882, ¶ 30. "[T]he duress defense 'is strictly and extremely limited in application and will probably be effective in very rare occasions.' " *White* at ¶ 18, quoting *State v. Cross*, 58 Ohio St.2d 482, 488, 391 N.E.2d 319 (1979).

{¶14} We do not believe that the juvenile court committed reversible error by excluding A.J.'s criminal record. While we can imagine ways in which a criminal record might assume relevance to establishing a duress defense, the probative value of A.J.'s criminal record is relatively slight under the circumstances. Since 2018, A.J.'s only convictions are for misdemeanor traffic violations such as driving under suspension, pedestrian violation, and operation of a motor vehicle without reasonable control. Although J.C. testified that A.J. has a history of domestic violence, his criminal record lists no convictions for domestic violence (and we see no indication of any assaults on family members). To be sure, A.J. has been convicted of three more serious offenses—robbery, aggravated robbery, and aggravated assault—but these convictions are over 12 years old.

{¶15} Based on the facts at hand, we do not believe that the exclusion of the criminal record materially prejudiced J.C. Even if the criminal record were admitted into evidence, J.C. cannot satisfy the fifth element of the duress defense (i.e., the immediacy of

the threatened harm, which leaves no alternative course of action). There is simply no evidence that A.J. would have, or could have, *immediately* harmed J.C. had she refused to conceal the firearm (particularly with police surrounding the car). To that end, even if the juvenile court abused its discretion by excluding the criminal record, this evidentiary error would not constitute reversible error because the absence of the criminal record did not materially prejudice J.C.

{¶16} Accordingly, we overrule J.C.'s first assignment of error.

III.

{¶17} For J.C.'s second assignment of error, she challenges the adjudication of delinquency as against the weight and sufficiency of the evidence.

{¶18} The standards for evaluating the weight and sufficiency of the evidence in juvenile adjudications track the standards used in adult criminal cases. *In re A.P.*, 2020-Ohio-5423, 163 N.E.3d 116, ¶ 9, 18 (1st Dist.). In reviewing whether the conviction runs counter to the manifest weight of the evidence, we sit as a "thirteenth juror." *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997). We will reverse the trial court's decision to convict and grant a new trial only in " 'exceptional cases in which the evidence weighs heavily against the [adjudication].' " *State v. Sipple*, 2021-Ohio-1319, 170 N.E.3d 1273, ¶ 7 (1st Dist.), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). "To determine whether [an adjudication] is supported by sufficient evidence, 'the relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.' " *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶ 12, quoting *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

A.

{¶19} We first consider whether the juvenile court's finding that J.C. possessed a "deadly weapon" under R.C. 2923.12(A) was against the weight or sufficiency of the evidence.

{¶20} Although J.C. challenges the weight of the evidence here, she points to nothing that weighs against the finding that she possessed a deadly weapon. And since we see nothing in the record that weighs heavily against the finding that J.C. possessed a deadly weapon, her challenge to the weight of the evidence fails.

{¶21} As for the sufficiency claim, R.C. 2923.12(A) prohibits a person from carrying "(1) [a] deadly weapon other than a handgun; (2) [a] handgun other than a dangerous ordnance; [or] (3) [a] dangerous ordnance." J.C. argues that "deadly weapon other than a handgun" distinguishes "deadly weapon" from a "handgun." J.C. posits that "deadly weapon" has a different meaning than "handgun" under R.C. 2923.12(A).

{¶22} J.C.'s interpretation of "deadly weapon" is inconsistent with the term's statutory definition. Under R.C. 2923.11(B)(1), a firearm is "any *deadly weapon* capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant." (Emphasis added.) Under R.C. 2923.11(C)(1), a handgun is "[a]ny *firearm* that has a short stock and is designed to be held and fired by the use of a single hand." (Emphasis added.) Reading R.C. 2923.11(B)(1) and (C)(1) together, a handgun is a type of firearm, and a firearm is a type of deadly weapon. As a matter of logic, therefore, proving that J.C. concealed a handgun would suffice to prove that she concealed a deadly weapon under R.C. 2923.12(A). Since there is no dispute that J.C. possessed a handgun, the state presented sufficient evidence to establish that she possessed a deadly weapon.

{¶23} At oral argument, J.C.'s appellate counsel appeared to reframe this sufficiency challenge as an attack on the adequacy of the complaint because it alleged that J.C.

concealed a "deadly weapon," and it charged her under R.C. 2923.12 without specifying the subsection. Because subsection (A)(1) encompasses deadly weapons other handguns, J.C. insists that the state charged her under the wrong subsection of R.C. 2923.12.

{¶24} "The purpose of accusatory instruments like criminal complaints is 'to inform the accused of the identity and the essential facts constituting the offense charged.' " *State v. Montoya*, 1st Dist. Hamilton No. C-210154, 2021-Ohio-3429, ¶ 4, quoting *State v. Broughton*, 51 Ohio App.3d 10, 11, 553 N.E.2d 1380 (12th Dist.1988). In other words, "a criminal complaint provides the defendant notice of the charges against him so that he may prepare a defense." *Montoya* at ¶ 4. "[C]omplaints lacking the relevant subsection are not per se defective where 'the complaint's substance [is] sufficient to inform' the defendant which subsection was violated." *Id.* at ¶ 8, quoting *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120572, 2013-Ohio-4775, ¶ 17. "The language used in the complaint 'is deemed sufficient if an individual of ordinary intelligence would not have to guess as to the type and scope of the conduct prohibited.' " *Montoya* at ¶ 8, quoting *State v. Sallee*, 6th Dist. Erie No. E-11-042, 2012-Ohio-3617, ¶ 8.

{¶25} The complaint alleged that J.C. "did knowingly have concealed on his/her person a deadly weapon, to wit: Black Smith & Wesson .40 cal handgun * * * in violation of Section 2923.12 of the Ohio Revised Code, a Felony of the Fourth Degree." Since the complaint did not specifically charge J.C. under either subsection (A)(1) or (2), and unambiguously described the "deadly weapon" as the same handgun that officers recovered at the scene, "the complaint required no guesswork" on the part of J.C. to discern the identity of the allegation. *Montoya* at ¶ 9.

{¶26} The complaint, therefore, put J.C. on adequate notice as to the nature of the allegations against her and was not deficient for failing to specify the relevant subsection of the statute.

B.

{¶27} We next turn to a consideration of whether the juvenile court's finding that J.C. concealed the handgun runs afoul of the weight or sufficiency of the evidence.

{¶28} For J.C.'s manifest-weight claim, she points to conflicting testimony between herself and the arresting officers. The arresting officers testified that, when they ordered J.C. out of the vehicle, she had her sweatshirt and work apron pressed firmly against her abdomen, concealing the firearm in her waistband. On the other hand, J.C. testified that she was in the process of informing the officers that she had the firearm before they took her to the ground, which implies that she made no attempt to hide the firearm from the officers.

{¶29} We ultimately conclude that the juvenile court's resolution of this conflicting evidence constituted a credibility determination that falls within its sound discretion. *See In re A.K.*, 1st Dist. Hamilton No. C-210178, 2021-Ohio-4199, ¶ 26 ("[T]he juvenile court's resolution of this conflicting evidence amounts to credibility determinations that fall within its sound discretion."), citing *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29 (" 'When conflicting evidence is presented at trial, [an adjudication] is not against the manifest weight of the evidence simply because the trier of fact believed the prosecution testimony.' "), quoting *State v. Lunsford*, 12th Dist. Brown No. CA2010-10-021, 2011-Ohio-6529, ¶ 17. For this reason, we find J.C.'s challenge to the weight of the evidence unavailing.

{¶30} As for J.C.'s sufficiency challenge, she claims that the state did not establish concealment because one of the officers noticed the firearm in plain sight after she exited the vehicle. "[P]roof of concealment does not require the state to establish complete invisibility." *State v. Pryor*, 1st Dist. Hamilton No. C-110205, 2012-Ohio-1033, ¶ 14. The state is merely required to prove that the handgun was not " 'discernable by ordinary observation.' " *Id.*, quoting *State v. Davis*, 15 Ohio App.3d 64, 64-65, 472 N.E.2d 751 (1st

Dist.1984). "Even a partially concealed gun can be found to be 'concealed' under R.C. 2923.12." *In re M.M.*, 1st Dist. Hamilton Nos. C-140628, C-140629, C-140630, and C-140631, 2015-Ohio-3485, ¶ 16.

**{¶31}** But this was not simply a partially concealed gun—as J.C. exited the vehicle, her manner of holding her work apron and sweatshirt operated to fully conceal the gun from the officers. Only when she dropped her apron/sweatshirt did a portion of the gun become visible. On these facts, we conclude that the state adequately established sufficient evidence that J.C. concealed the handgun.

C.

**{¶32}** The third issue is whether the juvenile court's rejection of J.C.'s duress theory aligned with the manifest weight of the evidence.[1] Again, as noted above, J.C. must establish five elements to establish duress. *White*, 1st Dist. Hamilton No. C-190262, 2020-Ohio-1231, at ¶ 17, quoting *Flinders*, 9th Dist. Summit No. 26024, 2012-Ohio-2882, at ¶ 30.

**{¶33}** J.C.'s claim that she feared A.J. because of his history of domestic violence may provide some support for various duress elements, but the fact that A.J. did not explicitly threaten J.C., and had not threatened her at any time prior to this incident, points in the other direction. We believe that the trial court's resolution of this conflicting evidence fell within its sound discretion. *See In re A.K.*, 1st Dist. Hamilton No. C-210178, 2021-Ohio-4199, at ¶ 26 ("[T]he juvenile court's resolution of this conflicting evidence amounts to credibility determinations that fall within its sound discretion."). In any case, since J.C. presented no evidence to establish the fifth element of duress (imminent harm leaving no alternative but compliance), the juvenile court's decision to reject her duress theory

---

[1] J.C. also insists that the juvenile court should have applied a reasonable-juvenile standard when assessing whether she was under duress. We take no position on whether the reasonable-juvenile standard is appropriate here since we believe that, even if the juvenile court had applied such a standard, the court could nevertheless reject her duress theory.

comported with the weight of the evidence. J.C. has failed to show that this is an extraordinary case where the evidence weighs heavily against the adjudication.

D.

{¶34} The final issue in J.C.'s second assignment of error inquires whether the state presented sufficient evidence to establish that she knowingly concealed the handgun. "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22(B).

{¶35} J.C. analogizes her case to *State v. Murphy*, 8th Dist. Cuyahoga No. 93093, 2010-Ohio-1422. In that case, after police executed a traffic stop, the officer found drugs on the floor of the vehicle between the passenger seat and the driver seat. *Id.* at ¶ 9. As soon as the defendant exited the vehicle, he told the officer that the driver of the vehicle put the drugs on his person, and that he attempted to pass them back to the driver. *Id.* The defendant was convicted of drug possession, but the Eighth District reversed, holding that his "momentary *involuntary possession*" of drugs was insufficient to establish that he knowingly possessed the drugs. (Emphasis sic.) *Id.*

{¶36} *Murphy* is inapposite for at least two reasons. First, the issue in *Murphy* was whether the defendant possessed drugs within the meaning of R.C. 2925.11(A), and not whether the defendant had the requisite mental state for that offense. The *Murphy* court interpreted "possession" under R.C. 2925.11(A) to require more than "momentary involuntary possession," but said nothing about the meaning of "knowingly" under R.C. 2901.22(B).

{¶37} Second, we see significant factual distinctions between *Murphy* and this case. In *Murphy*, the driver placed the drugs on the defendant's person, whereas in this case, the driver handed the gun to J.C. and she placed it in her waistband. In other words, J.C.

12

performed a voluntary act of placing the firearm in her waistband, but the *Murphy* defendant performed no voluntary act to accept possession of the drugs. Moreover, the arresting officers testified that as J.C. exited the vehicle, she awkwardly held her sweatshirt and work apron near her abdomen, in such a manner as to conceal the firearm in her waistband. No such evidence was present in *Murphy*. Under these facts, we believe that a rational trier of fact could conclude that J.C. knowingly concealed the firearm. For these reasons and those described above, we overrule J.C.'s second assignment of error.

IV.

{¶38} J.C.'s third assignment of error challenges the denial of her Juv.R. 29(F)(2)(d) motion. Juv.R. 29(F)(2)(d) provides that "[u]pon the determination of the issues" the juvenile court may "[d]ismiss the complaint if dismissal is in the best interest of the child and the community." "A juvenile court has broad discretion to dismiss a case after adjudication if dismissal is in the 'best interest of the child and the community.' " *In re S.D.*, 1st Dist. Hamilton Nos. C-200304 C-200305, C-200306 and C-200307, 2021-Ohio-2747, ¶ 9, quoting Juv.R. 29(F)(2)(d). "Whether a delinquency proceeding should be dismissed is within the sound discretion of the trial judge. * * * We review the court's determination for an abuse of discretion." *Id.* An abuse of discretion occurs when "a court exercis[es] its judgment, in an unwarranted way, in regard to a matter over which it has discretionary authority." *Johnson v. Abdullah*, Slip Opinion No. 2021-Ohio-3304, ¶ 35; *Hayes v. Durrani*, 1st Dist. Hamilton No. C-190617, 2021-Ohio-725, ¶ 8 ("An abuse of discretion connotes more than a mere error of judgment; rather, 'it implies that the court's attitude is arbitrary, unreasonable, or unconscionable.' "), quoting *Boolchand v. Boolchand*, 1st Dist. Hamilton No. C-200111, 2020-Ohio-6951, ¶ 9.

{¶39} J.C. argues that the court should have dismissed under Juv.R. 29(F)(2)(d) because she has no criminal record and her brother pressured her into concealing the

13

firearm on his behalf. We acknowledge the difficult position that J.C. found herself in, at the behest of an elder sibling. Although these could be reasons to grant a Juv.R. 29(F)(2)(d) motion, we do not believe that the juvenile court abused its broad discretion when denying the motion. We accordingly overrule J.C.'s third assignment of error.

*        *        *

{¶40}   Accordingly, we overrule J.C.'s first, second, and third assignments of error in full, and affirm the judgment of the juvenile court.

Judgment affirmed.

**WINKLER** and **BOCK, JJ.,** concur.

Please note:

The court has recorded its entry on the date of the release of this opinion.